556 So.2d 559 (1990)
Mable LEJEUNE, Individually, and as Succession Representative of Estate of Rayo Lejeune
v.
RAYNE BRANCH HOSPITAL.
No. 89-CC-0575.
Supreme Court of Louisiana.
February 5, 1990.
Rehearing Denied March 22, 1990.
*561 William J. Mitchell, II, Watson, Blanche, Wilson & Posner, Baton Rouge, for applicant.
Thomas E. Guilbeau, Lead Atty., Patrick L. Michot, Lafayette, for respondent.
CALOGERO, Justice.
Damages for mental pain and anguish are generally allowed in tort cases in Louisiana.[1] Nonetheless, mental pain and anguish sustained by a person not directly injured, because of the negligent infliction of injury on a third person, is not. Black v. Carrollton R.R. Co., 10 La.Ann. 33 (1855). In the case before us, involving the latter type of mental pain and anguish claim, the district court, and the court of appeal in a lengthy and studious opinion, have ruled that Mrs. Mabel LeJeune has stated a cause of action for her own mental pain and anguish damages resulting from a series of rat bites to her hospitalized comatose husband.
We granted this writ of review sought by Rayne Branch Hospital because the rulings below are contrary to a long line of jurisprudence in this Court beginning with Black, and to determine whether Black, decided more than a century ago, should be overruled.
Mrs. Lejeune's petition claims that her husband, Rayo Lejeune, was a patient at Rayne Branch Hospital and that he suffered multiple rat bites on his body on or about September 25, 1986 because of negligence of hospital personnel, and the hospital's failure to perform its contractual obligation to provide a proper facility and clean environment. Mr. Lejeune was in a coma when this incident occurred. Mrs. Lejeune, as succession representative, claims damages for pain and suffering, disfigurement, mental anguish and humiliation on behalf of her husband and, individually, for her own mental anguish damages. She contends that she "suffered mental anguish, due to her seeing her husband having been eaten alive by a rodent."
Defendant's exception of no cause of action presupposes the truth of petitioner's allegations. However, in this case the parties' attorneys in oral argument before this Court stipulated that, for purposes of this no cause of action exception, the asserted facts would be those that Mrs. Lejeune recited at her deposition, taken on May 5, 1988.
Accordingly, the facts to be tested here by the no cause of action exception are as asserted above, but with these modifications. Mr. Lejeune was not "eaten alive",[2] and she did not see her husband being *562 bitten by the rat. Rather she came into her husband's hospital room and discovered his wounds, which had apparently been inflicted just shortly before. She was simultaneously told by the student nurse what had happened (including that the student nurse had just cleaned blood from Mr. Lejeune's wounds).
The hospital's peremptory exception of no cause of action is directed only at Mrs. Lejeune's mental anguish claim. The argument relies on several of this Court's opinions, Black included, the latest of which was rendered in 1917, and numerous court of appeal cases since that time which have followed those earlier opinions.
Black, supra, involved a claim for mental anguish damages by a father whose son was severely injured because of the negligence of employees of the defendant railroad. This Court, in declining to afford a remedy to the father, who had apparently not witnessed the injury to his son, held specifically that recovery for mental anguish because of the injuries to another would amount to "vindictive damages", not favored under our law. They also noted the public policy concern of imposing liability on the railroad industry, of such great importance to the nation at that time (the year was 1855), as well as the difficulty in assessing damages for injuries of this nature.
Black was followed by another decision of this Court which denied recovery to a parent for mental anguish because of an "offense" to her minor children. Two of plaintiff's teenage sons were arrested in the presence of their mother in Sperier v. Ott, 116 La. 1087, 41 So. 323 (1906), but later acquitted of any wrongdoing. The mother witnessed the arrest, and suffered such shock that she fainted and required hospitalization. Even though the mother later died, in part because of her severe emotional distress, the Court refused damages for her mental suffering, citing Black.
Then, in Brinkman v. St. Landry Cotton Oil Co., 118 La. 835, 43 So. 458 (1907), a father, who had not witnessed the injury but was on the defendant's premises at the time, was refused damages for the mental pain he suffered when his son was injured by the defendant's negligence.
The last case considered by this court on this issue was Kaufman v. Clark, 141 La. 316, 75 So. 65 (1917).[3] In that case, a mother sought damages for her humiliation and mental anguish because of the defendant's alleged sexual contact with the mother's minor daughter. The Court recognized that a claim for damages for mental anguish was actual and compensatory, not punitive as Black had stated, yet held that a claim for damages to one's "feelings" for injury to a third person, still living, does not exist under our law, citing Black.[4] This Court has not addressed the issue since Kaufman, in 1917. From then until the present we have denied writs in numerous cases in which the lower courts have followed the Black rule. In many of those cases the lower courts have criticized Black and its progeny, believing that recovery should be permitted. In several instances, the courts of appeal have urged us to reassess this Court's position regarding this issue. As earlier noted, our granting this plaintiff's writ application now affords us that opportunity.
While the law has given protection against negligent acts to the interest in security of the person and to various interests in tangible property, that is, liability *563 for personal injury or property damage, the interest in freedom from mental disturbance has been the subject of substantial controversy. Early jurisprudence in this country allowed claims for mental anguish only if accompanied by physical injury (the "impact rule") (both where the plaintiff's claim arose from fear of injury to himself as well as where it arose from witnessing some peril or harm to another person). Recovery was denied absent "impact" because of several perceived fears. It was argued that emotional damages could not be measured monetarily, thus could not alone serve as the basis of recovery; that it would open a floodgate of litigation; and that it was too remote from the negligent act, thus, was not "proximately caused" by the defendant's act. W. Prosser & W. Keaton, Torts, § 54 at 360 (5th ed. 1984).
These fears have somewhat diminished. The judiciary readily allows damages for mental pain and suffering sustained along with physical injury. There is no more difficulty in ascertaining damages when physical injury does not accompany emotional harm than when it does. Blackwell v. Oser, 436 So.2d 1293 (La.App. 4th Cir.), writ denied, 442 So.2d 453 (La.1983); Chappetta v. Bowman Transp., Inc., 415 So.2d 1019 (La.App. 4th Cir.1982). Louisiana courts have long recognized that mental anguish damages are actual damages, McGee v. Yazoo & M.V.R. Co., 206 La. 121, 19 So.2d 21 (La.1944), thus, should be redressed. In addition, medical advances of today provide greater objective proof of such damages so that it is no longer necessary to rely solely on the plaintiff's testimony of damages to allow recovery. Kolder v. State Farm Ins. Co., 520 So.2d 960, 964, n. 2 (La.App. 3d Cir.1987); Versland v. Caron Transport, 206 Mont. 313, 671 P.2d 583 (1983).
The fear that the courts may be flooded with litigation is not sufficient justification to disallow those claims that are legitimate. It is the duty of the courts to discern valid claims from fraudulent ones. Waldrop v. Vistron Corp., 391 So.2d 1274 (La.App. 1st Cir.), writ denied, 394 So.2d 281 (La.1980); Brauninger v. Ducote, 381 So.2d 1246, 1249 (La.App. 4th Cir.1979), Lemmon, J., concurring.
Other courts, early on, easily dismissed claims for mental anguish damages on a finding that the defendant's duty did not extend to this type of harm. Jilek v. Colonial Penn Ins. Co., 468 So.2d 671 (La.App. 4th Cir.1985); Gibbons v. Orleans Parish School Board, 391 So.2d 976 (La.App. 4th Cir.1980); Miles v. Illinois Central Gulf R. Co., 389 So.2d 96 (La.App. 4th Cir.), writ denied, 394 So.2d 612 (La.1980); McKey v. Dow Chemical Co., Inc., 295 So.2d 516 (La.App. 1st Cir.1974). On the other hand, several courts of appeal in this state have expressed dissatisfaction with the failure to find a duty owed by the defendant.[5] That dissatisfaction is based chiefly on the premise that the refusal to recognize mental anguish damages in these instances is contrary to general tort principles under La. Civil Code art. 2315, which, of course, provides that "(e)very act whatever of man that causes damage to another" should be redressed.
The blanket denial of these claims since Black has especially been criticized because the treatment of mental anguish claims for injury to a third person differs from the jurisprudential treatment of mental anguish claims for damages to one's property. See Fontenot v. Magnolia Petroleum Co., 227 La. 866, 80 So.2d 845 (1955); McGee v. Yazoo & M.V.R. Co., 206 La. 121, 19 So.2d 21 (1944). The Fourth circuit expressed its dissatisfaction with that distinction in Cambrice v. Fern Supply Co., Inc., 285 So.2d 863 (La.App. 4th Cir. 1973), while finding it necessary to refuse mental anguish damages. Writing for the court, Judge Redmann stated:

*564 Thus apparently the Louisiana law is that mental suffering from injury to one's property is compensable, and mental suffering from injury to one's child is not. Here, for example, the mother's grief over the bloodied and torn clothing of her son might be compensable, but her grief over his bloodied and torn leg is not.
For other cases criticizing the Black rule, although compelled to follow it, see Blackwell v. Oser, 436 So.2d 1293 (La.App. 4th Cir.), writ denied, 442 So.2d 453 (La. 1983); Hardy v. State through Dept. of Highways, 412 So.2d 208 (La.App. 3d Cir.), writ denied, 414 So.2d 305, 381 (La.1982); Kolder v. State Farm Ins. Co., 520 So.2d 960 (La.App. 3d Cir.1987); Waldrop v. Vistron Corp., 391 So.2d 1274 (La.App. 1st Cir.), writ denied, 394 So.2d 281 (La.1980); Gibbons v. Orleans Parish School Board, 391 So.2d 976 (La.App. 4th Cir.1980); Lanham v. Woodward, Wight & Co., Ltd., 386 So.2d 131 (La.App. 3d Cir.) (Laborde, J., dissenting), writ denied, 392 So.2d 668 (La. 1980); Brauninger v. Ducote, 381 So.2d 1246 (La.App. 4th Cir.1980).
Before beginning our discussion of La. C.C. art. 2315 and an attendant duty-risk analysis, we will first review the treatment given this matter by other states. Initially, a number of other states used the impact rule, to which reference has been made earlier in this opinion. That rule limited mental anguish damages regarding harm to another to bystanders who were also physically injured by the defendant's negligence. The impact rule largely fell out of favor, and the zone of danger test, which limited damages to bystanders who were sufficiently close to the danger,[6] was adopted by a number of courts. See W. Prosser and W. Keeton, Torts, § 54, at 363-65 (5th ed. 1984). Louisiana courts did not adopt either of these exceptions for allowing recovery. Blackwell, 436 So.2d at 1296, n. 4.
Dillon v. Legg, 68 Cal.2d 728, 69 Cal. Rptr. 72, 441 P.2d 912 (1968), a California Supreme Court case, was the first in this country to allow damages to a plaintiff who had not received a physical impact and was not in the zone of danger to which the injured victim was exposed. In that case, a mother had actually witnessed an automobile strike and throw her child into the air. The mother's own safety was not threatened by the offending automobile. Yet, she "sustained great emotional disturbance and shock and injury to her nervous system" that resulted in "great physical and mental pain and suffering," and was awarded damages. While finding that recovery for these types of injuries must be determined on a case-by-case basis, the court focused on the foreseeability of the mental distress injury to the plaintiff, from the defendant's perspective, in determining whether a duty on the part of the defendant existed. The court limited its ruling to the particular facts before it, but formulated the following flexible guidelines to assess the question of foreseeability in future cases:
"(1) Whether plaintiff was located near the scene of the accident as contrasted with one who was a distance away from it.
"(2) Whether the shock resulted from a direct emotional impact upon plaintiff from the sensory and contemporaneous observance of the accident, as contrasted with learning of the accident from others after its occurrence.
"(3) Whether plaintiff and the victim were closely related, as contrasted with an absence of any relationship or the presence of only a distant relationship."

Dillon v. Legg, 69 Cal.Rptr. at 80, 441 P.2d at 920.
Various cases since Dillon have tended to broaden Dillon's holding and have allowed recovery to plaintiffs who have not actually witnessed the injury, but have *565 come upon the accident scene soon thereafter, (Archibald v. Braverman, 275 Cal. App.2d 253, 79 Cal.Rptr. 723 (1969); Krouse v. Graham, 19 Cal.3d 59, 137 Cal. Rptr. 863, 562 P.2d 1022 (1977); Nazaroff v. Superior Court, 80 Cal.App.3d 553, 145 Cal.Rptr. 657 (1978)); and also to plaintiffs who had not experienced any physical consequences of their emotional anguish. See Ochoa v. Superior Court, 39 Cal.3d 159, 216 Cal.Rptr. 661, 703 P.2d 1 (1985); Hedlund v. Superior Court, 34 Cal.3d 695, 194 Cal.Rptr. 805, 669 P.2d 41 (1983).
More recently, however, the California Supreme Court found that the foreseeability test along with Dillon's flexible case-by-case guidelines were too "abstract" and in need of refinement. They chose, therefore, to pronounce definite elements for recovery, and, in the process, to contract rather than expand the areas of permissible recovery. That decision, the latest by that state concerning this matter, is Thing v. La Chusa, 48 Cal.3d 644, 257 Cal.Rptr. 865, 771 P.2d 814 (1989), in which the court faced a claim for mental anguish damages by a mother who neither saw nor heard the automobile strike her child. The mother came to the scene soon afterward, and saw her "bloody and unconscious child, whom she believed was dead, lying in the roadway." Thing, 257 Cal.Rptr. at 866, 771 P.2d at 815. The plaintiff's claim for damages was dismissed after the court formulated new limitations for recovery. Recovery is now allowed by the California Supreme Court only if the plaintiff:
"(1) is closely related to the injury victim;
"(2) is present at the scene of the injury producing event at the time it occurs and is then aware that it is causing injury to the victim; and
"(3) as a result suffers serious emotional distress  a reaction beyond that which would be anticipated in a disinterested witness and which is not an abnormal response to the circumstances." (Footnotes omitted.)

Thing v. La Chusa, 257 Cal.Rptr. at 880-81, 771 P.2d at 829-30.
Several other states, on the other hand, allow recovery based on the "sensory and contemporaneous observance" of the victim under the Dillon guidelines, even if the plaintiff did not see the injury-causing event, but rather arrived on the scene just afterwards. These courts generally find that the shock is just as great upon viewing a victim immediately after the injury-causing event if at the accident scene and before any material change has occurred in the victim's condition. See Tommy's Elbow Room, Inc. v. Kavorkian, 727 P.2d 1038 (Alaska 1986); James v. Lieb, 221 Neb. 47, 375 N.W.2d 109 (1985); Corso v. Merrill, 119 N.H. 647, 406 A.2d 300 (1979); General Motors Corp. v. Grizzle, 642 S.W.2d 837 (Tex.App. Waco, 1982); Gates v. Richardson, 719 P.2d 193 (Wyo.1986).
Some other states limit the category of successful claimants by requiring that the plaintiff suffer "serious" emotional distress. For instance, the court in Paugh v. Hanks, 6 Ohio St.3d 72, 451 N.E.2d 759 (1983) restricted recovery to cases "(w)here a person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." (Citation omitted.) The court gave examples (a "non-exhaustive litany") which included traumatically induced neurosis, psychosis, chronic depression, and phobia. See also Anderson v. Scheffler, 242 Kan. 857, 752 P.2d 667 (1988); Ramirez v. Armstrong, 100 N.M. 538, 673 P.2d 822 (1983); and Sinn v. Burd, 486 Pa. 146, 404 A.2d 672 (1979).
The manifestation of physical injury in a plaintiff resulting from the emotional impact of the defendant's conduct is the crucial element in some jurisdictions.[7] Furthermore, *566 some states limit recovery to cases in which the traumatized victim receives serious personal injury or death. See Villamil v. Elmhurst Mem. Hospital, 175 Ill.App.3d 668, 125 Ill.Dec. 105, 529 N.E.2d 1181 (1988); Wargelin v. Sisters of Mercy Health Corp., 149 Mich.App. 75, 385 N.W.2d 732 (1986); Polikoff v. Calabro, 209 N.J.Super 110, 506 A.2d 1285 (1986). Other states, because of a perceived difficulty in limiting recovery otherwise, still restrict recovery to those within the zone of danger of the defendant's conduct. See James v. Harris, 729 P.2d 986 (Colo.App. Div. I 1986); Rickey v. Chicago Transit Auth., 98 Ill.2d 546, 75 Ill.Dec. 211, 457 N.E.2d 1 (1983).
The Restatement (Second) of Torts requires that the plaintiff suffer a physical impact from the defendant's negligent conduct, but it provides an exception to that requirement for those who are family members of the direct victim and were present when the victim was injured. See Restatement (Second) of Torts §§ 436 & 436(A) (1965).
Thus, it can be seen that the cases since Dillon v. Legg reveal an increasing disinclination to bar, outright, mental anguish damages to a party not directly injured. These courts have premised recovery on the concept of foreseeability and general tort principles. Yet, there are ample policy concerns for setting limits or administrative boundaries establishing the permissible instances of recovery. There are fears of flooding the courts with "spurious and fraudulent claims"; problems of proof of the damage suffered; exposing the defendant to an endless number of claims; and economic burdens on industry. Blackwell, supra. While these fears are legitimate, they can be addressed by limiting the circle of plaintiffs who can recover so that a deserving plaintiff is compensated for serious emotional damages without opening the door to more troublesome claims.
Turning now to the case under consideration, we must decide whether, and if so, under what circumstances, Louisiana law should permit recovery for these types of mental anguish damages. Any recovery for mental anguish tort damages must be based on La. Civil Code art. 2315, which provides, in pertinent part, that:
(e)very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it.
The duty-risk analysis is used to assist our courts in determining whether one may recover under art. 2315. Entrevia v. Hood, 427 So.2d 1146 (La.1983); Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972); Dixie Drive It Yourself System v. American Beverage Co., 242 La. 471, 137 So.2d 298 (1962). The pertinent duty-risk questions are:
(1) Was the affirmative conduct a cause-in-fact of the resulting harm?
(2) Was there a duty to protect this plaintiff from this type of harm arising in this manner?
(3) Was that duty breached?
Molbert v. Toepfer, 550 So.2d 183 (La. 1989); Mart v. Hill, 505 So.2d 1120 (La. 1987); Shelton v. Aetna Casualty & Sur. Co., 334 So.2d 406 (La.1976); Hill v. Lundin and Assoc., Inc., 260 La. 542, 256 So.2d 620 (1972); W. Crowe, The Anatomy of a Tort, 22 Loy.L.Rev. 903 (1976).
The first and third questions are fairly easily resolved in this case: (1) cause-in-fact and (3) breach of a duty. As to cause-in-fact, Mrs. Lejeune alleges that the negligence of the hospital in allowing her husband to be bitten repeatedly by a rat caused her mental anguish. On this exception of no cause of action, we accept the plaintiff's allegations as true. La.C.C.P. art. 931; Pitre v. Opelousas Gen. Hosp., 530 So.2d 1151 (La.1988); Haskins v. Clary, 346 So.2d 193 (La.1977). Therefore, for our purpose here, the hospital was negligent in allowing the rat to enter Mr. Lejeune's room and bite him on his face and leg; and Mrs. Lejeune, upon witnessing the wounds and learning of these circumstances, suffered mental anguish. On these facts, the negligence of the hospital was the cause-in-fact of the plaintiff's mental anguish.
Assuming that the hospital had a duty to avoid causing Mrs. Lejeune mental pain and anguish in this manner (the second *567 question above), the matter of whether that duty was breached (the third question above) is fairly simple in this case. It was. Negligently allowing a rat to bite her husband, and knowing that Mrs. Lejeune would likely witness or learn of the event because of daily visits with her husband, was a clear violation of a duty not to cause Mrs. Lejeune emotional distress.
This brings us to the second duty-risk question noted above, the one which is dispositive in this case: whether a duty is owed to Mrs. Lejeune by the hospital to protect her from this type of harm arising in this manner. This element has long been considered an impediment to awarding mental anguish damages to a person not directly injured, such as Mrs. Lejeune. The courts of this state have generally found that a duty is not owed to this person, but rather only to the person directly injured. Lanham v. Woodward, Wight & Co., Ltd., 386 So.2d 131 (La.App. 3d Cir.), writ denied, 392 So.2d 668 (La. 1980); McKey v. Dow Chem. Co., Inc., 295 So.2d 516 (La.App. 1st Cir.1974).
Yet, in a few exceptional Louisiana cases the courts of appeal have been able to ferret out an independent duty owed to an aggrieved non-traumatically injured plaintiff. See Bishop v. Callais, 533 So.2d 121 (La.App. 4th Cir. 1988), writ denied, 536 So.2d 1214 (La.1989) (Court of Appeal found that the parents stated a cause of action for mental anguish damages because of injuries inflicted upon their minor child while confined in a psychiatric hospital, and that a duty owed by the hospital to the parents may exist.); Skorlich v. East Jefferson Gen. Hosp., 478 So.2d 916 (La.App. 5th Cir.1985) (Physician owed a duty to father as well as to mother not to negligently injure the child during the birth process, finding that since the father's seed created the fetus, he had the "obligation to care, protect and raise the fetus to adulthood." Presumably, the court found that the father would likely suffer mental anguish from any possible injury to the child because of his status as father and the relationship normally expected between a father and his child.); Holland v. St. Paul Mercury Ins. Co., 135 So.2d 145 (La.App. 1st Cir.1961) (Court of appeal found on the part of an exterminating company, an independant contractual duty owed to the parents, the contracting parties, to properly perform its obligations under the contract and to respond with proper advice in the event of an emergency, separate from the duty owed their son who allegedly ingested rat poison.); Champagne v. Hearty, 76 So.2d 453 (La.App.Orl.1955) (Damages awarded to a mother for mental anguish and fear of harm to her fetus because of injury sustained by the mother caused by the defendant's negligence); Jordan v. Fidelity & Casualty Co., 90 So.2d 531 (La. App. 2d Cir.1956) (Damages awarded to a father for worry and mental anguish that his unborn child might have been injured because of physical injuries sustained by the mother, caused by the negligence of the defendant); Valence v. Louisiana Power & Light Co., 50 So.2d 847 (La.App. Orl.1951) (Court of appeal allowed damages to parents for mental anguish and worry because of injury to a viable fetus that could result in a stillbirth).[8]
Courts in this state have also found a cause of action for mental anguish damages to the relatives for injury to a dead body, caused by the negligence of the defendant. These cases, however,[9] premise *568 recovery on a property theory likening the corpse to a property interest of the relatives. Thus, these cases are closer to those like Fontenot, supra, where recovery has been allowed for mental anguish regarding injury to property, rather than to Black.
The court of appeal decisions cited hereinabove have been referred to as "maverick" cases (see Judge Stoker's majority court of appeal opinion in this case, Lejeune v. Rayne Branch Hospital, 539 So.2d 849 (La.App. 3d Cir. 1989)) because they are out of step with Black. The bulk of the cases (court of appeal decisions and the three cases by this Court, Sperier, supra; Brinkman, supra; and Kaufman, supra), however, have followed Black in dismissing claims for mental pain and anguish damages for injuries to a third person. The failure to find a duty in these latter court of appeal cases, besides respecting the Black precedent, may simply have expediently prevented recovery in order to "protect a tort-feasor from the unreasonable demands of myriads of claimants who sustain no personal injury" and to avoid "flood(ing) the court" with litigation. See McKey v. Dow Chemical Co., Inc., supra.
A recent opinion of this Court, however, has presaged our overruling of Black in noting that "any act (... that causes damage to another)" in art. 2315 encompassed
"innumerable acts which constituted faults under whatever form they appeared. The framers conceived of fault as a breach of a preexisting obligation, for which the law orders reparation, when it causes damage to another, and they left it to the court to determine in each case the existence of an anterior obligation which would make an act constitute fault." (Emphasis provided.)
Pitre v. Opelousas Gen. Hosp., 530 So.2d 1151, 1156 (La.1988), citing 2 M. Planiol, Treatise on the Civil Law, Part 1 §§ 863-865 (1959).
Pitre involved the alleged negligence of a physician who, having caused the failure of a tubal ligation, failed to warn the mother that the surgery was unsuccessful. This led to an unplanned and unwanted birth of a child, which to the parents' additional dismay was born an albino. Recognizing the physician's duty to the parents to act reasonably so as to avoid acts or omissions which might foreseeably lead to the birth of a child (in a case where the doctor had undertaken a procedure to sterilize the mother), we held that the parents had stated a cause of action for the emotional and mental distress associated with the birth of their "unplanned and unwanted" child, since these were foreseeable consequences of the alleged negligence.
C.C. art. 2315 and duty-risk principles govern our effort to ascertain whether, as a general proposition, a duty exists which may encompass the risk of mental anguish damages to a third person based on injuries to another. Because policy considerations, including social, moral and economic elements, play an important role in formulating the existence of a duty, we examine those policy implications to determine when the law will extend a duty in these cases. PPG Industries, Inc. v. Bean Dredging, 447 So.2d 1058 (La.1984); Bell v. Jet Wheel Blast, 462 So.2d 166 (La.1985), Crowe, supra, at 906.
It is helpful to note, at the beginning, that the hospital clearly owed a duty to Mr. Lejeune, which it breached, by permitting this incident to occur. A hospital owes a duty to exercise the necessary care toward a patient that his condition requires, including protecting him from dangers which may result from the patient's mental and physical incapacities and from external circumstances peculiarly within the hospital's control. Hunt v. Bogalusa Community Medical Center, 303 So.2d 745 (La. 1974); Roark v. St. Paul Fire & Marine Ins. Co., 415 So.2d. 295 (La.App. 2d Cir.), writ denied, 416 So.2d 557 (La. 1982). The more difficult question we face here, however, is whether the hospital owed an independent duty to Mrs. Lejeune not to cause her mental pain and anguish in the manner in which they did.
We have noted in earlier cases that the ease of association between the duty owed *569 and the risk encountered is a proper focus of inquiry in finding the existence of a duty. Dunne v. Orleans Parish School Bd., 463 So.2d 1267 (La.1985); PPG Industries, supra; Hill, supra. We have also said that foreseeability alone cannot be the sole inquiry because all risks are not foreseeable, and some risks that are foreseeable may not be included because not within the scope of that duty. Forest v. State, thru La. Dept. of Transp., 493 So.2d 563 (La. 1986); Carter v. City Parish Government, 423 So.2d 1080 (La. 1982); Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972).
Furthermore, as earlier indicated, policy considerations dictate that the law should narrow the circle of plaintiffs who should be allowed recovery. The mere fact that a duty exists does not mean that it extends to everyone against every risk all of the time. PPG Industries, supra; Hill v. Lundin & Associates, Inc., 260 La. 542, 256 So.2d 620 (1972). A defendant cannot be expected to be liable to virtually everyone who may suffer in any manner from his negligent conduct. The law must place some reasonable limit to liability by ascertaining or defining the scope of the duty owed by the defendant. Within what reasonable limits  under what circumstances  should the law require a negligent defendant to compensate, for mental pain and anguish, a person not directly injured whose distress is caused by the defendant's infliction of injury on another?
Applying these principles, we find that there is no reasonable support for barring all claims for mental anguish damages. A duty does exist to protect a plaintiff from mental anguish damages occasioned by the negligent infliction of injury to a third person. Yet, there are policy reasons for placing limits on the types of claims that may be redressed. We thus overrule Black v. Carrollton R.R. Co., while deciding in this case just what limits should be established on the availability of a cause of action for mental pain and anguish damages because of physical injury to a third person.
Just as many other states have done, we find need to move restrictively in this area. It is for this reason that we are not inclined to rely simply on general principles of duty and negligence.[10] Administrative boundaries or guidelines imposed jurisprudentially at the outset will facilitate application by the lower courts, ensure that there is no open-ended exposure of tortfeasors, and ensure as well that a policy of limited exposure to serious mental pain and anguish damages sustained by a limited class of claimants will be permitted.
Accordingly, we will determine in this case what guidelines should control the allowance of recovery, focusing on whether the plaintiff must observe the injury-causing event, the type of injury suffered by the victim, the severity of the plaintiff's mental pain and anguish, and the character of the relationship between the victim and the plaintiff. We acknowledge that this process is somewhat arbitrary. It is nevertheless necessary if we are to give practical guidance, and at the same time, decide the case before us. Any other method of deciding this case and prescribing the jurisprudential rules to govern allowable mental pain and anguish claims of this sort, would lend more uncertainty, more ad hoc resolution to the cases arising hereafter than is to be preferred. Moving from a jurisprudential situation where no claims have been allowed for mental pain and anguish relative to injury to third parties, to one in which some but not all claims will be allowed, of necessity requires some line drawing at the outset. This same method has been applied in other states, as is evidenced by references earlier in this opinion to the formulae adopted in the cited cases.
Aided in some measure by those other experiences, but applying C.C. art. 2315 and duty-risk principles, with attendant policy considerations, we conclude that mental *570 pain and anguish claims arising out of injury to third persons are allowable, with these modifications and restrictions:
1. A claimant need not be physically injured, nor suffer physical impact in the same accident in order to be awarded mental pain and anguish damages arising out of injury to another. Nor need he be in the zone of danger to which the directly injured party is exposed. He must, however, either view the accident or injury-causing event or come upon the accident scene soon thereafter and before substantial change has occurred in the victim's condition.[11]
2. The direct victim of the traumatic injury must suffer such harm that it can reasonably be expected that one in the plaintiff's position would suffer serious mental anguish from the experience.
3. The emotional distress sustained must be both serious and reasonably foreseeable to allow recovery. Serious emotional distress, of course, goes well beyond simple mental pain and anguish. Compensation for mental pain and anguish over injury to a third person should only be allowed where the emotional injury is both severe and debilitating. For instance, Paugh v. Hanks, 6 Ohio St.3d 72, 451 N.E.2d 759, 765 (1983) held that "serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." A non-exhaustive list of examples of serious emotional distress includes neuroses, psychoses, chronic depression, phobia and shock. Paugh, supra; Molien v. Kaiser Foundation Hospitals, 27 Cal.3d 916, 167 Cal.Rptr. 831, 616 P.2d 813 (1980).
4. A fourth restriction concerns the relationship of the claimant and the direct victim. Considering the significant delimiting effect of the first three requirements, a plausible argument can be made for allowing these damages at least to all claimants having a close relationship with the victim. For instance, Professor Ferdinand Stone has stated that: "The test (for recovery) should not be blood or marriage, but rather whether the judge or jury is convinced from all the facts that there existed such a rapport between the victim and the one suffering shock as to make the causal connection between the defendant's conduct and the shock understandable." 12 F. Stone, Louisiana Civil Law Treatise Tort Doctrine, § 170 (1977).
On the other hand, it is perhaps also plausible to restrict recovery to all close relatives, such as spouse, children, parents and siblings.[12]
The case before us does not require that we define more distinctly the class of permissible claimants. However narrowly this Court's majority may in time choose to limit the class, plaintiff Mrs. Lejeune, the wife of the directly injured victim, qualifies. Regarding this fourth requirement, therefore, we leave for another day a decision whether recovery should be allowed only for close relatives (and if so, *571 which ones), or rather, for those with simply a close relationship to the victim.
Applying these requirements to the case at hand, we conclude that the plaintiff, Mrs. Lejeune, does state a cause of action for the following reasons:
1. Mrs. Lejeune came upon the scene of the injury causing event before substantial change had occurred in her husband's condition. Mrs. Lejeune arrived at her husband's hospital room shortly after the injury-causing event and after the student nurse cleaned blood from Mr. Lejeune's wounds. Her husband had not been moved to another room. He had not been bandaged. Even though some of the blood surrounding the holes on his face had been removed, it did not appreciably change his appearance.
2. The type of injury suffered by Mr. Lejeune is one which would reasonably be expected to cause his spouse mental pain and anguish. Rodents gnawing on a patient's comatose body is particularly repulsive. Mrs. Lejeune stated at her deposition, in describing her husband's appearance that:
"They weren't cuts; you could tell it was eaten  eaten by little rounds, and there was blood, and it was all ... he had some on his head, his face, his neck, and his nose. Now, you know that rodent went in his mouth because they would feed him through the mouth, and he had to breathe with his mouth open." Tr. 71.
3. Mrs. Lejeune's emotional distress caused by this incident was reasonably foreseeable. Whether it was serious, whether it was severe and debilitating, whether she in fact suffered chronic depression or other similarly significant mental harm, is a matter of proof.[13]
4. For the reasons noted hereinabove, Mrs. Lejeune, as a spouse of the direct victim qualifies as a permissible claimant.
In summary, mental pain and anguish sustained by a non-traumatically injured person because of injury to a third person is compensable in circumstances that fit the four guidelines recited hereinabove. And, for the reasons given herein, we find that Mrs. Lejeune has sufficiently stated a cause of action.

DECREE
For the foregoing reasons the judgments of the district court and the court of appeal overruling defendant's exception of no cause of action are affirmed.
AFFIRMED.
LEMMON, J., subscribes to the opinion and assigns additional reasons.
COLE, J., concurs, with reasons.
MARCUS, J., dissents and assigns reasons.
WATSON, J., dissents from the reversal of 100 years of jurisprudence.
LEMMON, Justice, subscribing to the opinion and assigning additional reasons.
The tort system has a dual purpose of deterrence and reparation. As to the latter, the principal focus should be on compensation for physical injuries. While I agree that there is a cause of action for mental anguish damages resulting from the negligent injury to a closely related third person, I would impose narrow restrictions on the right of recovery, including limiting recovery to the same beneficiaries entitled to recovery of damages resulting from the negligent death of a closely related third person.
COLE, Justice (concurring).
I agree with the majority's conclusion that mental pain and anguish sustained by a non-traumatically injured person because of injury to a third person may be compensable. However, I write separately to expound *572 on two points left unclear by the majority opinion.
The first of these involves the majority's statement that "a non-exhaustive list of examples of serious emotional distress includes neuroses, psychoses, chronic depression, phobia and shock." Although clearly dicta, the listing of these psychological terms of art imply that any emotional condition falling within their ambit may be compensable. Given the broad scope of any psychological term, it is possible that a condition might be diagnosed as being one of the enumerated terms, yet not be severe enough to qualify as "serious emotional distress." Thus, there is a potential for confusion in the lower courts as to whether a mild case of psychosis or neuroses, simply because it is so termed, is automatically to be considered as being serious emotional distress. The same applies to chronic depression, phobia and shock.
I believe there is no need for such confusion, as the majority has provided a very clear and useful test:
[S]erious mental distress may be found where a reasonable man, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case.
This test was originally stated by the Supreme Court of Hawaii in Rodrigues v. State, 52 Haw. 156, 472 P.2d 509 (1970), and has been adopted by several other states. By focusing on the well-known "reasonable man" standard, the finder of fact is given guidance. Thus, even if a particularly susceptible person is diagnosed as manifesting a mild case of psychosis, he still may not state a claim for serious mental distress if the fact finder determines a reasonable man, normally constituted, would have been able to cope with the mental stress engendered by the circumstances of the case. The test is a subjective one; not one of objective psychiatric terminology.
Secondly, I believe the majority shirks its duty of providing guidance to the lower courts when it "leaves for another day a decision whether recovery should be allowed only for close relatives (and if so, which ones), or rather, for those with simply a close relation to the victim." By leaving this question open, the majority fails to limit effectively the circle of plaintiffs who can recover, despite its stated goal of doing so.
The inevitable consequence of creating a cause of action in this area is that definitive lines must be drawn. Although such line drawing may work hardships in certain cases, it is necessary to avoid the "floodgates" problem. As the majority notes, the California Supreme Court has always required the plaintiff and victim be "closely related." Compare Dillon v. Legg, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968) with Thing v. La Chusa, 48 Cal.3d 644, 257 Cal.Rptr. 865, 771 P.2d 814 (1989). The Restatement (Second) of Torts requires the plaintiff suffer a physical impact from defendant's negligent conduct, but provides an exception for family members of the direct victim who were present when the victim was injured. Thus, there is ample support for the proposition that this cause of action should be restricted to close family members.
The legislature faced a similar line drawing problem when it enacted the present version of the wrongful death action (La. Civ. code art. 2315.2). That article limits the scope of recovery to the spouse, children, parents and siblings. I believe similar limitations must be imposed in the context of the present case.
Accordingly, I respectfully concur.
MARCUS, Justice (dissenting).
I do not consider that the risk of causing mental anguish to plaintiff is within the scope of defendant's duty to provide necessary care to a patient. Further, defendant does not owe an independent duty to prevent the mental anguish of an uninjured third person, such as the plaintiff. Damages for harm suffered by uninjured third persons should be strictly limited. The legislature made a policy choice to allow recovery of damages for loss of consortium, service and society, but not for mental anguish, to specific individuals who are closely related to the injured person when it *573 amended La.Civ.Code arts. 2315.1 and 2315.2. The extension of a duty to uninjured third persons who suffer mental anguish will result in an unjustified proliferation of litigation. However, even if the duty were extended to uninjured third persons as did the majority, I would limit the extension of the duty to provide a cause of action for mental anguish to those persons, closely related to the victim as listed in La.Civ.Code arts. 2315.1 and 2315.2, who suffer severe mental anguish as a result of observing the victim's serious injury, and who are in the "zone of danger" at the time of the accident. Under this more limited theory, plaintiff does not have a cause of action for the recovery of mental anguish because she was not present and did not directly observe the accident that caused her husband's injuries. Accordingly, I respectfully dissent.
LEMMON, J.  concurs in the denial of rehearing, but has reservations about allowing recovery when the injury did not occur in the presence of the plaintiff. This Court may reconsider, in an appropriate case in the future, whether to impose the limitations suggested in Restatement (Second) of Torts, Section 436(3) (1965).
NOTES
[1] Meador v. Toyota of Jefferson, Inc., 332 So.2d 433 (La. 1976); Amedee v. Cruse, 526 So.2d 433 (La.App. 4th Cir.1988); England v. S & M Foods, Inc., 511 So.2d 1313 (La.App. 2d Cir.1987).
[2] In fact, in the portion of plaintiff's petition asserting injury and corresponding damages for her now deceased husband, plaintiff does not assert that he later died as a result of the bite wounds. Thus, she does not here bring a wrongful death action. Nor does she claim medical or other special damages in connection with her husband's claim.
[3] We note the distinction between some of these early cases in the types of injuries sustained by the direct victims of the defendants' negligence. In Sperier and perhaps in Kaufman as well, the direct victims' injuries were emotional, rather than physical. In Black and Brinkman, on the other hand, the direct victims sustained physical injuries because of the negligent acts.
[4] It has been stated that the major holding in Black commanded the assent of only two of the five justices on the Court. Lanham v. Woodward, Wight & Co., Ltd., 386 So.2d 131 (La.App. 3d Cir.), Laborde, J., dissenting, writ denied, 392 So.2d 668 (La. 1980). That may or may not be so. With one of the five justices not participating, a concurring justice who disagreed with the major holding and just two subscribers to the "majority" opinion, there was nonetheless a third justice, although dissenting for other reasons, who agreed with the opinion that mental anguish damages were not recoverable.
[5] Several commentators have also expressed their dissatisfaction with the rule expressed in Black. See 12 F. Stone, Louisiana Civil Law Treatise Tort Doctrine, § 170 (1977); F. Stone, Louisiana Tort Doctrine: Emotional Distress Occasioned By Another's Peril, 48 Tul.L.Rev. 782 (1974); D. Robertson, Torts  Intervening Negligence  Proximate Cause, 23 La.L.Rev. 281, 292-94 (1963); Plotkin and Grodsky, Damages For Mental Anguish To Non-Injured Relatives  A Time For Change, 31 Louisiana Bar Journal 96 (1983).
[6] This approach, according to Prosser and Keeton, appears to have been adopted from Hambrook v. Stokes Brothers, (1925) 1 K.B. 141, an English case in which the plaintiff and her child were standing in the path of the defendant's vehicle. The child was struck and injured. The mother, herself threatened with physical injury and witnessing the injury to her child, was not physically injured, but suffered mental anguish damages. See W. Prosser and W. Keeton, Torts, § 54, at 365 (5th ed. 1984).
[7] For jurisdictions requiring physical manifestation of the emotional trauma see Williams v. Baker, 540 A.2d 449 (D.C.App.1988); Posey v. Medical Center-West, Inc., 184 Ga.App. 404, 361 S.E.2d 505 (1987); Corso v. Merrill, 119 N.H. 647, 406 A.2d 300 (1979); Ramirez v. Armstrong, 100 N.M. 538, 673 P.2d 822 (1983); Prado v. Catholic Medical Center, 536 N.Y.S.2d 474, 145 A.D.2d 614 (A.D. 2 Dept.1988); Reilly v. U.S., 547 A.2d 894 (R.I.1988); Kinard v. Augusta Sash Door Co., 286 S.C. 579, 336 S.E.2d 465 (1985); Cunningham v. Lockard, 48 Wash.App. 38, 736 P.2d 305 (Wash.App. Div. 2 1987).
[8] Other cases have allowed mental anguish damages to mothers injured because of the negligence of the defendant for the mental anguish and worry over possible injury or death to an unborn child. See Jolivette v. Safeco Ins. Co., 379 So.2d 1213 (La.App. 3d Cir.1980); Buckelew v. Plunkett, 242 So.2d 372 (La.App. 2d Cir.1970); Wheeler v. Simonton, 215 So.2d 359 (La.App. 2d Cir. 1968); Warr v. Kemp, 208 So.2d 570 (La. App. 3d Cir. 1968); Bee v. Liberty Mut. Ins. Co., 165 So.2d 73 (La.App. 4th Cir.1964); Davis v. New York Underwriters Ins. Co., 141 So.2d 673 (La.App. 1st Cir. 1962); Deshotels v. United States Fire Ins. Co., 132 So.2d 504 (La.App. 3d Cir.1961); Rogillio v. Cazedessus, 122 So.2d 897 (La.App. 1st Cir. 1960); Nomey v. Great American Indemnity Co., 121 So.2d 763 (La.App. 2d Cir. 1960); Wiley v. Sutphin, 108 So.2d 256 (La. App. 2d Cir.1958); Olivier v. Transcontinental Ins. Co., 93 So.2d 701 (La.App.Orl.1957).
[9] See Fortuna v. St. Bernard Memorial Gardens, Inc., 529 So.2d 883 (La.App. 4th Cir. 1988); Burton v. City of New Orleans, 464 So.2d 943 (La. App. 4th Cir.1985); Shelmire v. Linton, 343 So.2d 301 (La.App. 1st Cir. 1977); Blanchard v. Brawley, 75 So.2d 891 (La.App. 1st Cir. 1954).
[10] We note that there is a contrary view to the effect that the establishment of guidelines circumvents the general principles of duty and negligence, and that those general principles should be used in all cases to determine if recovery should be permitted. See Harper, James & Gray, The Law of Torts, Vol. 3 § 18.4, at 704-705 (1986).
[11] We choose not to draw the line at viewing the injury-causing event (or the accident in progress). Nor, for public policy reasons, will there be allowed mental pain and anguish damages to those who do not view the accident or come upon the scene, but rather merely learn of another's traumatic injury.

Other states have recognized that "(t)he essence of the tort is the shock caused by the perception of the especially horrendous event." Gates v. Richardson, 719 P.2d 193 (Wyo.1986). See also Corso v. Merrill, 119 N.H. 647, 406 A.2d 300 (1979), which found that "(t)he emotional injury must be directly attributable to the emotional impact of the plaintiff's observation or contemporaneous sensory perception of the accident and immediate viewing of the accident victim. Therefore, recovery will not be permitted for emotional distress when the plaintiff is merely informed of the matter after the accident...." (Citations omitted.)
[12] The provision concerning recovery for damages for loss of consortium, service and society arising from injuries to another person limits the class of plaintiffs to surviving spouse and/or children; absent the foregoing, to parents; and absent parents, to brothers and sisters of the victim. See La.C.C. art. 2315, second paragraph and C.C. art. 2315.2. The consortium claim was added by a 1982 codal amendment which does not directly address mental pain and anguish damages.
[13] Plaintiff, without benefit of this opinion, did not specifically allege that she suffered serious and reasonably foreseeable emotional distress. A liberal reading of the pleading, however, wherein she alleges that she suffered mental anguish and consequent damages in the amount of $350,000, prompts us to conclude that her allegations are sufficient for the present purpose of finding that a cause of action has been stated.