hGAUDIN, Judge.
Mrs. Bryan Schexnayder was bitten by a dog on August 23, 1995. After her arm, stomach and leg wounds were dressed and she “cleaned up,” she went to her home where she was seen by her minor children, Brandon and Bryan.
Mrs. Schexnayder, for herself and on behalf of the children, subsequently filed suit against the owners of the dog and their insurer, Allstate Insurance Company.
Following trial in the 29th Judicial District Court, judgment was rendered in favor of Mrs. Schexnayder in the amount of $34,-704.30, in favor of Brandon in the amount of $4,000.00 and in favor of Bryan in the amount of $10,000.00.
On appeal, the dog’s owners and Allstate argue that the award to Mrs. Schexnayder was excessive and that she was contributorily negligent. Further, appellants contend that the awards to the children were not authorized by Louisiana law.
We affirm the award to Mrs. Schexnayder under the manifest errorjrule. The awards to the children, however, are beyond the scope of Lejeune v. Rayne Branch Hospital, 556 So.2d 559 (La.1990), and LSA-C.C. art. 2315.6 and are set aside.
Mrs. Schexnayder was attacked by a large Abita dog when she went to the residence of Joseph Tarto to pick up her brother-in-law’s children, at the request of her sister-in-law. She entered the fenced yard and knocked on the front door. Moments later, Mrs. Schexnayder turned around and there was the dog, which jumped up and bit Mrs. Schexnayder on her right forearm, on her stomach, on her left calf and on her left thigh. Mrs. Schexnayder was so frightened that she urinated on herself.
While Mrs. Schexnayder knew that there were dogs at the Tarto residence, she did not know one was vicious. There is a small bell on the page fence near the gate. This is not a regular door bell that would ring or buzz inside the house but an actual bell. Mrs. Schexnayder thought the bell was decorative. She testified that there were no warnings or instructions near the bell and there were no “Bad Dog” signs or indications of any kind that a dog in the yard could be dangerous.
Photographs in evidence show the gate, fence and bell and also the three large wounds on Mrs. Schexnayder’s right wrist and hand, the puncture wound on her stomach, the two puncture wounds on her right calf and the two puncture wounds on her left thigh. Stitching was required. It took approximately six months for all of the wounds to heal except for those on her right arm. Mrs. Schexnayder said at trial that she still feels discomfort in her right arm and that she has been prescribed anti-inflammatory ^medication. Medical evidence supports Mrs. Schexnayder’s injuries and fingering complaint about her right arm. In addition, there is scarring.
Mrs. Schexnayder was also left with what her counselor described as an anxiety disorder. She re-fives the attack and now has an extreme fear of dogs. Following the assault, Mrs. Schexnayder had nightmares and had problems eating and sleeping. She said she lost interest in things that formerly were of interest to her.
Among the trial witnesses was police lieutenant Pam Schmidt, who said that she had been attacked by the same dog three years prior. She described her vivid memory of the incident and the fact that she now is fearful of dogs.
*1114 Evidence and testimony are supportive of the award to Mrs. Schexnayder and also the finding by the trial judge that she was not contributorily negligent when she went to the Tarto household to pick up her brother-in-law’s children.
After being bitten, Mrs. Schexnayder went to the home of a neighbor where she was given a towel and administered first aid. She then went to her house before going to a hospital emergency room. At home, she was seen by the children, who were naturally upset. The children cried.
Civil Code article 2315.6 was enacted by the state legislature in 1991 in response to the Lejeune case, wherein damages were awarded to a woman who sustained severe mental pain and anguish after seeing a series of rat bites on her hospitalized comatose husband. The Louisiana Supreme Court found the emotional distress suffered by the wife to be reasonably ^foreseeable and serious, well beyond simple mental pain and anguish.
Art. 2315.6 states:
“The following persons who view an event causing injury to another person, or who come upon the scene of the event soon thereafter, may recover damages for mental anguish or emotional distress that they suffer as a result of the other person’s injury:
(1) The spouse, child or children, and grandchild or grandchildren of the injured person, or either the spouse, the child or children, or the grandchild or grandchildren of the injured person.
(2) The father and mother of the injured person, or either of them.
(3) The brothers and sisters of the injured person or any of them.
(4) The grandfather and grandmother of the injured person, or either of them.
To recover for mental anguish or emotional distress under this Article, the injured' person must suffer such harm that one can reasonably expect a person in the claimant’s position to suffer serious mental anguish or emotional distress from the experience, and the claimant’s mental anguish or emotional distress must be severe, debilitating, and foreseeable. Damages suffered as a result of mental anguish or emotional distress for injury to another shall be recovered only in accordance with this Article.”
Here, the children neither saw the attack nor did they “come upon the scene of the event soon thereafter” as the article requires. Further, the testimony at trial indicated that while the children were naturally distraught when they saw their mother with a bloody towel wrapped around her arm, they (the children) did not sustain severe or debilitating mental anguish or emotional distress. They continued to attend school and their grades have not suffered.
AFFIRMED IN PART, REVERSED IN PART.