751 So.2d 436 (2000)
Reatha L. NELSON, Individually and as Representative of her Deceased Mother, Elsie Mae Zeigler and as Administratrix of Robert Zeigler, Plaintiff-Appellee,
v.
RUSTON LONGLEAF NURSE CARE CENTER, INC., Defendant-Appellant.
No. 32,718-CA.
Court of Appeal of Louisiana, Second Circuit.
February 1, 2000.
Writ Denied April 28, 2000.
Lunn, Irion, Johnson, Salley & Carlisle by Ronald E. Raney, Shreveport, Robert E. Shadoin, Ruston, Counsel for Appellant.
James E. Ross, Jr., Monroe, Jean Marie Farquharson, Counsel for Appellee.
*437 Before NORRIS, PEATROSS, KOSTELKA, JJ.
KOSTELKA, J.
After a trial on the merits, a jury awarded $175,000 to the daughter of a nursing home resident who had suffered decubitus ulcers, amputations, and eventual death. Finding no factual basis for the award, we reverse the judgment rendered against the nursing home.

Facts and Procedural History
Due to a decline in health followed by surgeries on her finger and shoulder, Elsie Mae Ziegler ("Ziegler") became a resident of Ruston Longleaf Nurse Care Center ("Longleaf") for the first time in January 1991. In the early part of that same year, Ziegler began to suffer complications from medications she was taking and was transferred to another healthcare facility for treatment of those problems. While away from Longleaf, Ziegler fell and broke her hip.
Upon completion of the subsequent rehabilitation program, Ziegler returned to Longleaf in May 1991. At that time, along with her general health complaints (including cardiomyopathy, vascular disease, and arteriosclerosis), Ziegler presented with decubitus ulcers or pressure sores, most notably located on her right heel. Over the course of the next several weeks, the condition deteriorated rather than improved. Finally, on June 30, 1991, physicians determined that a gangrenous infection had settled into the patient's right leg, and Ziegler was transferred to a local hospital for the surgical amputation of the limb.
After her recovery, Ziegler entered a second long-term facility, Alpine Nursing Home. While in residence there, Ziegler developed a pressure sore on the top of her left foot. Again, her condition declined to the point that it became necessary to amputate her left leg in December 1991. Several months later, in May 1992, while still in the care of Alpine, Ziegler's heart failed and she died.
Believing both amputations as well as Ziegler's death to have been caused by negligent care at Longleaf, Ziegler's daughter, Reatha Nelson ("Nelson"), filed suit against that nursing home. Although the parties disagreed whether the nurses employed at Longleaf correctly complied with properly-executed orders from the attending physician, the medical evidence presented at trial clearly demonstrated that the need for the first amputation did not result from any supposed negligent care Ziegler may have received at Longleaf. Instead, once the pressure sore appeared (prior to her second admittance to Longleaf), Ziegler's poor circulatory health prevented the ulcer from properly healing and contributed to the onset of the gangrene infection. The evidence further demonstrated that this first amputation did not give rise to the need for the second amputation. And, neither amputation contributed to Ziegler's ultimate death.
Although the jury determined that Longleaf breached its duty of care to Ziegler, it also concluded that any such breach did not legally cause the loss of either leg or her death and made no awards for those requested items of damages.[1] The jury did, however, grant Nelson $175,000 in mental anguish damages. Longleaf appeals, contending that there is neither a legal nor factual basis for an award of "Lejeune" damages to Nelson.

Discussion
Damages for mental pain and anguish sustained by a person not directly *438 injured are, nevertheless, compensable within certain enumerated restrictions. The supreme court in Lejeune v. Rayne Branch Hospital, 556 So.2d 559, 570 (La. 1990), set forth guidelines for awarding such damages:
1. A claimant need not be physically injured, nor suffer physical impact in the same accident in order to be awarded mental pain and anguish damages arising out of injury to another. Nor need he be in the zone of danger to which the directly injured party is exposed. He must, however, either view the accident or injury-causing event or come upon the accident scene soon thereafter and before substantial change has occurred in the victim's condition. [Footnote omitted.]
2. The direct victim of the traumatic injury must suffer such harm that it can reasonably be expected that one in the plaintiff's position would suffer serious mental anguish from the experience.
3. The emotional distress sustained must be both serious and reasonably foreseeable to allow recovery. Serious emotional distress, of course, goes well beyond simple mental pain and anguish. Compensation for mental pain and anguish over injury to a third person should only be allowed where the emotional injury is both severe and debilitating. For instance, ... "serious emotional distress may be found where a reasonable person, normally constituted, would be unable to cope adequately with the mental distress engendered by the circumstances of the case." ... [Citations omitted.]
4. A fourth restriction concerns the relationship of the claimant and the direct victim. Considering the significant delimiting effect of the first three requirements, a plausible argument can be made for allowing these damages at least to all claimants having a close relationship with the victim. ... On the other hand, it is perhaps also plausible to restrict recovery to all close relatives, such as spouse, children, parents and siblings. [Citation and footnote omitted.]
The law set forth in Lejeune, supra, was codified as La. C.C. art. 2315.6 after the incidents which give rise to the instant suit.[2] Moreover, our supreme court has explained that the plaintiff need not present proof of a psychological diagnosis. Blair v. Tynes, 621 So.2d 591 (La.1993), rehearing granted on other grounds, 625 So.2d 1346 (La.1993).
Inasmuch as the jury determined that Longleaf was not liable for the amputation of Ziegler's legs or for her subsequent death, those events cannot give rise to Lejeune damages on behalf of Nelson. The sole remaining event which might give rise to such damages occurred on June 29, 1991. For some time, Nelson suspected that the nursing staff at Longleaf had not been following orders prescribed by the treating physician for the care of her mother's pressure sores. Particularly, a bandage always appeared around Ziegler's right heel. Nelson believed that the doctor had ordered that the wound be left open. Upon arriving at the nursing home on June 29, Nelson noticed a very strong odor emanating from Ziegler's room. She traced the smell to her mother's foot. Nelson then demanded that the bandages be removed. When the nurses eventually complied, the bandage had to be soaked before it would release from Ziegler's foot. When the wound was finally exposed, the severely deteriorated condition of Ziegler's heel became quite apparent. It was after this incident that Ziegler was admitted to the hospital for the amputation of her right leg.
Longleaf questions whether this incident qualifies as an "accident" or "injury-causing event" under the language of Lejeune, supra. See discussion in Trahan v. Mc-Manus, 97-1224 (La.03/02/99), 728 So.2d 1273; and Lotz v. Ochsner Foundation *439 Hospital, 570 So.2d 232 (La.App. 5th Cir. 1990). We need not answer this question, however, in that the mental anguish suffered by Nelson was clearly neither severe nor debilitating.
Nelson presented very little evidence concerning her emotional or mental state upon watching the unwrapping of her mother's foot and seeing the deplorable condition of the heel. Based upon Nelson's observation, Ziegler had a hole in the back of her heel which revealed bone and stringy muscle tissue. Nelson described her own reaction as follows:
I had a fit. I was upset, very upset, and when I say I had a fit, I talked and I didn't curse. I didn't use words that were out of ordinary. They were just strong words of my feelings of what had happened to my mother's foot. I asked what happened and I kept asking what happened and that's what I did.
After discovering her mother's condition, Nelson had the presence of mind to have her son come to the nursing home to photograph the condition of Ziegler's foot. Nelson's son described his mother as "very upset." There is no testimony indicating that Nelson was thereafter unable to function or that she required any psychological counseling. Indeed, the record contains no further description of Nelson's mental state.
Although there can be no dispute that it must have been quite disconcerting for Nelson to view her mother in such a condition, the description offered by plaintiff falls quite short of an emotional injury that is both severe and debilitating. The jury's conclusion to the contrary is clearly wrong. Cf. Ledbetter v. Concord General Corp., 26,643 (La.App.2d Cir.03/01/95), 651 So.2d 911, reversed in part on grounds of insurance coverage, 95-0809 (La.04/18/96), 671 So.2d 915 (a young child who suffered nightmares and required counseling upon finding her grandmother after an assault did not sustain severe and debilitating mental anguish sufficient to justify Lejeune damages); Murphy v. K.D. Auger Trucking, Inc., 598 So.2d 443 (La.App. 2d Cir.1992), writ denied, 600 So.2d 685 (La. 1992) (daughter who found her father after he had been hit and killed by a truck was not awarded Lejeune damages); Declouet v. Orleans Parish School Board, 96-2805 (La.App. 4th Cir.06/03/98), 715 So.2d 69, writs denied, 98-2051 (La.11/13/98), 730 So.2d 450, 98-2054 (La.11/13/98), 730 So.2d 451, 98-2058 (La.11/13/98), 730 So.2d 935, 98-2079 (La.11/13/98), 730 So.2d 936 (appellate court reversed award of Lejeune damages where plaintiff experienced only aches, insomnia, bad dreams, and depression); Norred v. Radisson Hotel Corp., 95-0748 (La.App. 1st Cir.12/15/95), 665 So.2d 753 (wife did not suffer mental anguish or emotional distress after finding her husband had been the victim of a robbery; court of appeal reversed lower court award of Lejeune damages). For examples of plaintiffs whose emotional injuries were severe and debilitating see Blair, supra; and LaCour v. Safeway Insurance Company, 96-61 (La.App. 3d Cir.06/19/96), 676 So.2d 761, writ denied, 96-1859 (La.10/25/96), 681 So.2d 372.
Likewise, we agree with Longleaf that the trial court should have granted its motion for judgment notwithstanding the verdict. For a discussion of the standard used in reviewing a motion for JNOV, see Holt v. Cannon Express Corp., 31,271 (La. App.2d Cir.12/11/98), 722 So.2d 433, writ denied, 99-0104 (La.04/23/99), 742 So.2d 881.

Conclusion
Accordingly, for the foregoing reasons, we reverse the judgment rendered against Longleaf.[3] Costs are assessed to Nelson.
REVERSED.
NOTES
[1] Plaintiff failed to request any damages for general pain and suffering (aside from the amputations and death) which Ziegler may have suffered as a result of Longleaf's alleged negligent care. The failure to object to the exclusion of an issue from the special verdict form waives plaintiff's right to a trial by jury on that issue. La. C.C.P. arts. 1812, 1813. The trial court, in response to several post-judgment motions, also denied plaintiff any damages for Ziegler's pain and suffering. Plaintiff has neither appealed nor answered Longleaf's appeal.
[2] La. C.C. art. 2315.6 now enumerates those persons entitled to recovery.
[3] Because of the decision reached supra, we need not address Longleaf's argument regarding the jury charge or the excessiveness of the jury award.