# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT


## 05-97


**ROYCE MONK, ET AL.**

**VERSUS**

**STATE OF LOUISIANA, DOTD**

### Consolidated With

**DANA VEZINAT, ET AL.**

**VERSUS**

**STATE OF LOUISIANA, DOTD**

### Consolidated With

**MARLIN LASHLEY, ET AL.**

**VERSUS**

**STATE OF LOUISIANA, DOTD**

### Consolidated With

**GREG HARMON, ET AL.**

**VERSUS**

**STATE OF LOUISIANA, DOTD**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTIETH JUDICIAL DISTRICT COURT
PARISH OF VERNON, NOS. 59,553-B, 60,555-B, 60,543-B, 60,560-B
HONORABLE JOHN C. FORD, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*\*\*\*\*
**SYLVIA R. COOKS**
**JUDGE**
\*\*\*\*\*\*\*\*\*\*\*\*\*\*


Court composed of Ulysses Gene Thibodeaux, Chief Judge, Sylvia R. Cooks and J. David Painter, Judges.

**AFFIRMED IN PART; REVERSED IN PART AND RENDERED.**

**Jacques M. Roy**
**Chris J. Roy, Jr., A.P.L.C.**
**1100 M.L. King Drive**
**Alexandria, LA 71301**
**(318) 487-9537**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
     **Marlin and Danny Lashley**

**Tony C. Tillman**
**P.O. Drawer 648**
**Leesville, LA 71496**
**(337) 239-7983**
**COUNSEL FOR PLAINTIFF/APPELLEE:**
     **Russel Warren**

**Lloyd Keith Milam**
**P.O. Box 610**
**DeRidder, LA 70634**
**(337) 462-1200**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
     **Greg Harmon, et al.**

**Danial C. Vidrine**
**12445 Parkvilla Ave.**
**Baton Rouge, LA 70816**
**(225) 752-4520**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
     **Royce Monk, et al.**

**Eugene A. Ledet, Jr.**
**P.O. Drawer 12850**
**Leesville, LA 71315-2850**
**(337) 445-6581**
**COUNSEL FOR PLAINTIFFS/APPELLEES:**
     **Royce Monk, et al.**

**David P. Spence**
**P.O. Drawer 12365**
**Alexandria, LA 71315-2365**
**(318) 487-4300**
**COUNSEL FOR DEFENDANT/APPELLANT:**
     **State of Louisiana, DOTD**

**COOKS, Judge.**

The State of Louisiana, through the Department of Transportation and Development, appeals the judgment of the lower court finding its failure to clear an intersection of weeds and foliage was the sole proximate cause of the automobile accident at issue. It also appeals the damage awards. For the following reasons, we affirm in part and reverse in part.

### FACTS AND PROCEDURAL HISTORY

On September 12, 1996, an automobile accident occurred at the intersection of US Highway 171 and Holly Grove Road, just south of the town of Anacoco in Vernon Parish. At this intersection, US 171 is a divided, four-lane road with parallel twelve foot lanes with a grassy median between. There are four foot shoulders and the speed limit is 55 miles per hour. Holly Grove Road is a two-lane roadway maintained by the Vernon Parish Police Jury. Approximately 100 feet before the intersection with US 171, Holly Grove Road crosses railroad tracks.

On the date in question, Reba Harmon drove her automobile on Holly Grove Road with five minor children (Brandon Monk, Brandie Monk, Kyle Harmon, Megan Warren and Logan Warren) as passengers. To reach her destination, Mrs. Harmon needed to cross the southbound lanes of US 171 and turn left to proceed north. At that time, Danny Lashley was driving his pick-up truck in a southerly direction on US 171, with his father, Marlin, in the passenger seat. He was not speeding. As the Lashley vehicle approached the intersection with Holly Grove Road, Mrs. Harmon's vehicle entered US 171, and despite Mr. Lashley's attempts to avoid the accident, the cars collided.

Mrs. Harmon and one of the five children, Logan Warren, died. Brandie Monk sustained serious injuries, while the other three children suffered relatively minor

injuries. Danny and Marlin Lashley also suffered injuries from the accident.

As a result of the accident, suit was filed on behalf of Royce Monk, individually and on behalf of his minor children, Brandie and Brandon, and Judith Beverly (Reba harmon's mother) against the State of Louisiana, through the Department of Transportation and Development (DOTD), alleging negligence on the part of DOTD in the design and maintenance of US 171. Suit was eventually amended to name Brandie and Brandon as primary plaintiffs when they reached the age of majority.

A petition was also filed by Dana Vezinat, individually, and James Russell Warren, individually, for damages caused by the death of their minor child, Logan Warren, and for damages on behalf of their minor child, Megan Warren, against DOTD for its negligence in the design and maintenance of US 171.

Suit was also filed on behalf of Marlin Lashley, his spouse, Barbara Lashley, Danny Lashley, and his spouse, Summer Lashley, against DOTD alleging the same or similar complaints of negligence.

Lastly, suit was filed on behalf of Greg Harmon, individually and as natural tutor of his minor child Kyle Harmon, against DOTD only, asserting the same or similar acts of negligence on the part of DOTD.

DOTD answered each petition alleging it was not negligent or at fault in causing the accident. DOTD contended the accident was caused solely through the negligence and fault, individual or combined, of Reba Harmon and Danny Lashley. A trial by jury was requested, but later dropped by DOTD.

The cases were consolidated and a bench trial was held. Both plaintiffs and DOTD called experts to testify about the construction of the highway, placement of signs, sight distances required, and the speed of the vehicles.

The court rendered written reasons for judgment finding DOTD solely at fault in causing the accident. The trial court found there were no defects in the layout and construction of the highways and that speeding was not a cause of the accident. Although the exact location of the right of way line between DOTD and Kansas City Southern Railroad was never established, the trial court concluded it was clear from the evidence that DOTD had assumed the maintenance of the undergrowth along the highway. The trial court therefore found DOTD had legal garde of the intersection. After hearing the evidence and viewing the photographs presented at trial, the court concluded the intersection had not been cleared of extraneous weeds and brush in accordance with DOTD's own policies and was, therefore, defective and created an unreasonable risk of harm. The trial court then concluded:

> . . . [I]t is more probable than not the foliage and vegetation at a point just behind the stop line would partially obstruct a driver's view of south bound traffic but that the partial obstruction was of such a nature that it would lead a reasonable person to conclude that the coast was clear without creeping forward to the edge of the roadway.
>
> The Court also finds it is more probable than not that Reba Harmon exercised due diligence by stopping at the stop line and looking twice to her left before entering the intersection.
>
> Finally, considering all of the circumstances of this case the Court finds that it is more probable than not that the failure of DOTD to clear this intersection of weeds and foliage was the sole proximate cause of the accident.

The trial court awarded damages in favor of the plaintiffs. DOTD filed a Motion for New Trial, asserting that the finding of fault and damage awards were contrary to the law and the evidence. The trial court maintained its finding that DOTD was solely at fault in causing the accident, but amended the judgment in certain respects regarding damages. The trial court's amended, final judgment listed the following damage awards to the respective parties:

Royce Monk:

General damages for loss of society
of his children, Brandon and Brandie . . . . . . . . . . . . $ 50,000.00
Special damages for Brandie . . . . . . . . . . . . . . . . . .   63,935.00
Special damages for Brandon  . . . . . . . . . . . . . . . . .    2,728.54

Brandon Monk:

Injuries to jaw; fracture of collarbone;
injury to the head; injury to other parts
of his body; pain and suffering and
mental anguish . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   50,000.00

Loss of society of mother; loss of love
and affection and support . . . . . . . . . . . . . . . . . . . .  500,000.00

Mental anguish from seeing his
mother injured  . . . . . . . . . . . . . . . . . . . . . . . . . . .   25,000.00

Brandie Monk:

Multiple fractures; injury to head; brain;
fracture of right femur; internal bleeding;
multiple soft tissue injuries; loss of
enjoyment of life; physical disability and
impairment  . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  180,000.00

Loss of society of mother; loss of love
and affection and support  . . . . . . . . . . . . . . . . . .  500,000.00

Judith Beverly:

Emotional distress . . . . . . . . . . . . . . . . . . . . . . . .   75,000.00

_____

Marlin Lashley:

Pain and suffering; mental anguish  . . . . . . . . . .   50,000.00
Medical specials . . . . . . . . . . . . . . . . . . . . . . . . .    1,611.89

Danny Lashley:

Pain and suffering; mental anguish  . . . . . . . . . .  105,000.00
Medical specials . . . . . . . . . . . . . . . . . . . . . . . . .    1,013.44

_____

Dana Vezinat:

Loss of society of Logan; grief;

loss of love and affection . . . . . . . . . . . . . . . . . . 350,000.00

James Russell Warren:

Loss of society of Logan; grief;
loss of love and affection . . . . . . . . . . . . . . . . . . 500,000.00
Medical specials . . . . . . . . . . . . . . . . . . . . . . . . 2,043.13

Megan Warren

Injuries to the mouth; generalized
contusion; mental anguish; pain
and suffering; loss of enjoyment of
life; physical disability . . . . . . . . . . . . . . . . . . . 50,000.00

_____

Greg Harmon:

Medical expenses for his minor child . . . . . . . . . 21,014.07
                                                        178.00

Kyle Harmon:

Multiple contusions; brain injury;
fractured skull; fractured pelvis;
lacerations; permanent hearing loss;
permanent scarring; emotional, mental
anxiety and poss traumatic stress;
future loss of income . . . . . . . . . . . . . . . . . . . . 100,000.00
Loss of society of his mother; grief;
loss of love and affection; mental
anguish suffered at the sight of his
deceased mother . . . . . . . . . . . . . . . . . . . . . . . . 500,000.00

DOTD appeals the trial court's judgment, arguing it erred in finding it solely

at fault in causing the accident. DOTD also contends the trial court erred in awarding

any damages or, alternatively, in awarding excessive damages.

## ANALYSIS

### I. *Apportionment of Fault.*

In a tort action against DOTD, whether based in strict liability or negligence,

La.R.S. 9:2800 requires that the plaintiff prove: (1) the property which caused the

damage was in the custody of DOTD; (2) the thing was defective and created an unreasonable risk of harm; (3) DOTD had actual or constructive knowledge of the risk; and (4) the defective thing was a cause-in-fact of the plaintiff's injuries. See also *Toston v. Pardon*, 03-1747 (La. 4/23/04), 874 So.2d 791.

DOTD did not dispute ownership or custody of the intersection in question, or that it was required to cut the grass and trim any shrubbery that presented a sight obstruction. Moreover, DOTD presented no witness to testify there was *not* at least some sight obstruction at the intersection due to overgrown grass and shrubbery on the date of the accident. In addition to Marlin and Danny Lashley, who were involved in the accident, and Amanda Keel, who witnessed the accident, plaintiffs adduced the testimony of numerous witnesses who regularly traversed the intersection in question and who all stated unequivocally that overgrown grass and shrubbery presented a sight obstruction at the intersection. The photographs in the record also clearly reveal the excessive height of the grass and shrubbery.

The record supports the trial court's conclusion that DOTD had actual or constructive knowledge of the dangerous condition of the intersection. Joe Piro, the Mayor of Anacoco, testified concerning numerous accidents that occurred at the intersection in question. He also stated he wrote a letter to DOTD approximately two year before the accident requesting a caution light be installed because of the number of accidents at the intersection. A DOTD maintenance superintendent testified he inspected the roads in his district every two weeks, including the intersection in question. He also stated although DOTD regulations required that roadside weeds and vegetation not exceed 12 inches, he simply did not have sufficient manpower and equipment to comply with this mandate.

Lastly, the record is replete with testimony and photographs that establish the

overgrown grass and shrubbery at the intersection presented a sight obstruction that was a cause-in-fact of the accident. Therefore, plaintiffs met the burden of proof set forth in La.R.S. 9:2800, and the trial court did not err in finding DOTD at fault for this accident.

Although it did argue against being assessed any fault in the causation of this accident, DOTD's primary argument is that even if the grass along the shoulder of US 171 "exceeded the desired height, there existed a ten (10) foot paved shoulder prior to a motorist placing herself in danger when entering US Highway 171 from Holly Grove Road." They contend Reba Harmon's failure to creep forward on this ten foot shoulder to determine if there was oncoming traffic was a cause-in-fact of the accident, and she should be assessed with a portion of fault for its occurrence. We disagree.

The record does not support a finding that Reba Harmon acted unreasonably. Amanda Keel, who was facing Reba Harmon's vehicle from across the median, testified Harmon stopped her vehicle at the stop bar. She then looked to her left, then to the right and appeared to speak to the children in the back. She then pulled forward slightly and looked again to her left before entering the intersection. Marlin Lashley testified he saw Harmon's vehicle cross the railroad tracks, but then could not see it because of the vegetation. He stated he was finally able to see a "portion of the front end between the windshield and the bumper," but could not see past the windshield of the vehicle. The evidence strongly suggests that Harmon's vehicle did creep a considerable distance beyond the stop bar just prior to the accident. Amanda Keel testified that Harmon's vehicle stopped first at the stop bar, then moved slightly forward before Harmon again stopped and looked to her left. The vehicle, however, was still mostly obscured from southbound traffic on Hwy. 171. We find no error in

the trial court's finding that Harmon was free from fault. Therefore, we affirm the trial court's determination that DOTD was solely at fault in causing this accident.

## II. Damages.

The trier of fact is accorded vast discretion in fixing general damage awards, such that an appellate court should rarely disturb an award of general damages. *Duncan v. Kansas City Southern Railway Co.*, 00-66 (La.10/30/00), 773 So.2d 670, *cert. dismissed*, 532 U.S. 992, 121 S.Ct 1651 (2001). The appellate court's role in reviewing general damage awards is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. *Id*. Only after articulated analysis of the facts on appellate review may the award be considered either excessive or insufficient. *Reck v. Stevens*, 373 So.2d 498 (La.1979). Appellate courts review the evidence in the light which most favorably supports the judgment to determine whether the trier of fact was clearly wrong in its conclusions. *Arceneaux v. Domingue*, 365 So.2d 1330 (La.1978).

DOTD appealed all of the trial court's damage awards. First, DOTD argues the wrongful death awards to the various plaintiffs were excessive. The trial court awarded Brandon Monk, Brandie Monk, and Kyle Harmon $500,000.00 each in damages for the loss of their mother. DOTD contends the amounts were excessive and a more reasonable award is in the "range of $250,000.00 to $300,000.00." We disagree and find the court's award was well within the range of similar awards. See *McGrail v. Lee*, 35,756 (La.App. 2 Cir. 4/3/02), 814 So.2d 729, (wherein the appellate court affirmed an award of $750,000.00 to a minor daughter and two adult sons for the loss of their mother). At the time of the accident Brandon and Brandie were living with their mother in Anacoco. After her death they had to move to Illinois, where their father lived. They were separated from their half-brother, Kyle,

and had to finish out high school in Illinois. Kyle, who also lived with his mother after her divorce from his father, underwent psychiatric treatment to help him cope with the loss of his mother. The trial court's wrongful death awards reflect the injury to these young individuals from losing the affection, care, assistance, advice and companionship of their mother.

DOTD also argues the wrongful death awards of $500,000.00 to James Russell Warren and $350,000.00 to Dana Vezinat for the loss of their son, Logan, were excessive. We disagree. The record indicates both parents had a close relationship with their son, and suffered enormously after his death. Further, the jurisprudence supports these awards. See *Duncan*, 773 So.2d 670, (the supreme court affirmed as not excessive awards of $350,000.00 each for mental anguish and $125,000.00 each for loss of consortium to the parents of a teenage boy who died in an automobile accident); *Cox v. Moore*, 01-878 (La.App. 3 Cir. 12/12/01), 805 So.2d 277, *writ denied*, 02-724 (La.5/31/03), 817 So.2d 94 (affirmed an award of $350,000.00 to the mother for the death of her eleven-year-old daughter); *Craighead v. Preferred Risk Mut. Ins. Co.*, 33,371 (La.App. 2 Cir. 8/25/00), 769 So.2d 112, *writ denied*, 00-2946 (La. 12/15/00), 777 So.2d 1230 (affirmed awards of $450,000 each to parents for the wrongful death of their eleven-year-old daughter).

DOTD argues the trial court's award of $50,000.00 to Brandon Monk for the physical injuries he suffered was excessive. We find no abuse of discretion in the trial court's award. Brandon was transported by ambulance from the accident scene where he was treated for a broken clavicle and injuries to his head and jaw. He also suffered from soft tissue injuries to various parts of his body as well as mental anguish arising from the accident.

We likewise find no abuse of discretion in the trial court's award of

$180,000.00 to Brandie Monk for the serious injuries she suffered in the accident. Brandie was transported immediately to the hospital. She was pronounced dead at one point in the emergency room, but was resuscitated back to life. Her injuries included a fractured jaw which required a plate be surgically implanted and her jaw be wired shut for months. She also fractured a femur which required surgical implantation of a rod. She was unable to walk without a limp for years. Brandie's serious injuries prevented her from attending her mother's funeral. The trial court also specifically noted that Brandie endured a significant loss of enjoyment of life.

DOTD also contends the trial court's award of $50,000.00 to Royce Monk for "general damages for loss of society of his children, Brandon and Brandie" was excessive. It argues because Royce Monk moved to Illinois when his children were young and only saw them on holidays and vacation, they had a "relatively distant relationship." DOTD also argues "although a tragic occurrence, the accident afforded Mr. Monk the opportunity to improve his relationship." We find this argument without merit and find no abuse of discretion in the trial court's award.

The trial court awarded Marlin Lashley $50,000.00 for his pain, suffering, and mental anguish. DOTD argues the award is excessive because Marlin did not seek medical care until a few days after the accident, when he complained of neck pain. Marlin testified his head slammed into the ceiling of the truck during the accident. Although he had no pain immediately following the accident, days later he began suffering from extreme pain in his neck. He went to the hospital for treatment. Marlin testified he attempted to continue working, but was unable to do so due to the pain. As a result, Marlin underwent physical therapy treatment, which was unsuccessful in relieving his pain. Marlin testified he was greatly affected by the accident, and has a difficult time driving down the highway. Under these

circumstances, while we find the award may be on the high side, we do not conclude that it constitutes an abuse of the trier of fact's vast discretion.

We also find no abuse of discretion in the trial court's award of $105,000.00 for Danny Lashley's pain, suffering, and mental anguish. The testimony of Danny, who was driving the vehicle and was unable to avoid the accident, clearly demonstrated the long-term emotional effect the accident had on him:

Q: What did you do after you ascertained that your father was okay and that you were, what did you do next?

A: I went to the other vehicle to see if I could help.

Q: And what did you see in terms of prior to getting to the vehicle? What did the vehicle look like when you were approaching?

A: Just - - it was - - it was tore up. I mean, I could see some of the occupants that were sitting up. The vehicle just looked, you know, it was bad.

Q: All right and, Danny, like I told your father, you heard me, I hate to have to ask you this, but when you say it was bad, what do you mean by that? When you approached the vehicle what did you see that you characterize as it was bad?

A: I was full of kids.

Q: Okay, so, you noticed first off that there were children involved?

A: Children. I went - - I went to the driver first and she was dead. She had no - - no - - no life. I believe - - his name is Brandon now, I didn't know none of their names then, he was in the passenger's seat. I told him that help was on the way. There was a little girl sitting behind him on the passenger's side, she had a busted mouth. She was bleeding, she was crying, she was screaming. And there was a - - there was some - - some children that I couldn't - - the car was wrapped around them, but there was a little boy . . .

Q: Was the little boy in the arms of some one or was he sitting alone?

A: He was just - - he was broke.

-11-

Q: That's how you would characterize him?

A: His eyes were rolled to the back of his head.

Q: Did you - - you thought he had already passed?

A: Yes, sir. I told my dad - - all I could say - - all I could say was they're all kids. That's all I could say.

Danny candidly testified that in time he was able to move past his physical injuries, but the mental anguish from the accident has been life altering. The trial court's award was not an abuse of discretion.

DOTD also argues that, in their amended petition, the Lashley's specifically pled they were entitled to damages "less than the jury trial jurisdictional limits." The jury trial jurisdictional limit is $50,000.00 per claim. This allegation was in response to an Exception of Vagueness filed by DOTD seeking a clarification of the Lashley's pleadings to determine if its was entitled to a jury trial. DOTD contends the Lashley's pleading precluded it "from requesting a jury in the Lashley suit and plaintiffs should be held to their judicial admission regarding the same." We disagree. Although the Lashleys did file an amending petition averring their damages were less that the jury trial jurisdictional amount, the State chose not to join that issue and create a binding stipulation. In its answer, DOTD denied that particular allegation by the Lashleys. DOTD also dropped any request for a jury trial, rendering moot its previous exception of vagueness.

DOTD also contends the trial court abused its discretion in awarding damages of $75,000.00 for emotional distress to Judith Beverly. Mrs. Beverly was Reba Harmon's mother, and was working in her yard when she heard the accident (she lived less than a quarter mile from the intersection) and the sirens from the emergency vehicles called to the scene. Only a few minutes prior to that, Reba Harmon and the children had stopped by Mrs. Beverly's house. A neighbor came up to Mrs. Beverly

-12-

and told her there had been an accident and she needed to go with her. Mrs. Beverly then went to the accident scene and saw her daughter motionless in the driver's seat. She knew her daughter was seriously injured, but did not find out she was dead until she arrived at the hospital. DOTD argues Mrs. Beverly is not entitled to damages "inasmuch as she sought no medical attention nor expressed significant distress in having viewed the scene."

However, in *Lejeune v. Rayne Branch Hospital*, 556 So.2d 559 (La.1990), the Louisiana Supreme Court recognized a plaintiff's right to recover damages for severe mental pain and anguish caused by witnessing serious injury to a close relation. Such *LeJeune* damages, as they are commonly referred to, have since been codified in La.Civ.Code art. 2315.6. Under article 2315.6, there are four basic requirements to recover damages for mental anguish or emotional distress suffered as a result of another person's injury. The requirements are as follows: 1) the claimant must have a specifically enumerated relationship with the injured person; 2) the claimant must have viewed an event causing injury to the injured person or have come upon the scene of the event soon thereafter; 3) the harm to the injured person must have been severe enough that one could reasonably expect the observer to suffer serious mental distress; and 4) the claimant must suffer emotional distress that is "severe, debilitating, and foreseeable." *Trahan v. McManus*, 97-1224, p. 8, n. 6 (La.3/2/99), 728 So.2d 1273, 1278, n. 6. Pursuant to the language of article 2315.6, a child and parent are clearly among those persons with a sufficient relationship to enable recovery of *Lejeune* damages.

We find Mrs. Beverly carried her burden of proving she suffered severe emotional distress as a result of witnessing the death of her daughter. She testified having to witness the condition of her daughter and three grandchildren at the

accident scene was extremely devastating. Although we find the award of damages may have be on the high side, we find it does not amount to an abuse of discretion. See *Cox*, 805 So.2d 277 (wherein this court found the trial court did not abuse its discretion in awarding $150,000 for a mother's mental anguish at witnessing the death of her daughter at an automobile accident scene.)

DOTD appealed the award of $25,000.00 in *LeJeune* damages to Brandon Monk for seeing his mother killed. At oral argument, counsel for Brandon Monk conceded that the trial court erred in rendering this award. By Brandon's own testimony, his first memories of the accident were when he awoke in the hospital. Therefore, the trial court erred in awarding *LeJeune* damages.

## DECREE

For the foregoing reasons, the judgment of the trial court awarding Brandon Monk $25,000.00 for his mental anguish in seeing his mother killed is reversed. The judgment is affirmed in all other respects. All costs of this appeal are assessed to defendant-appellant, DOTD.

**AFFIRMED IN PART; REVERSED IN PART AND RENDERED.**