MOORE, J.
|, United Fire <& Casualty Co. (“United Fire”) appeals a judgment finding that the negligent driver, Lovell Ellis, had express or implied permission to use a truck owned by his employer, Water Works Irrigation Inc. (“Water Works”), and insured by United Fire, when he was in a one-car accident that injured his passenger, Raquel Coleman. We affirm.

Factual Background

According to Ms. Coleman, she had met Ellis online and they became romantically involved. Around 5:00 pm on Thursday, January 20, 2011, Ellis called her to say he was at work and wanted to come pick her up around 9:00 pm. Ellis worked for Water Works, in Shreveport, and Ms. Coleman was living in Minden, about 35 miles away. They agreed that he would pick her up at her mother’s house, on East Street, and take her to her apartment at Hillside Apartments, off Industrial Drive, where they would just “hang out.” He arrived between 9:00 and 10:00, driving a Water Works pickup truck and wearing a dirty Water Works uniform. He picked her up and they started to her apartment; however, rounding the curve in Industrial Drive, he lost control of the truck. He zigzagged several times, eventually flipping the truck and landing it on its side in a drainage ditch to the right of the road. Ms. Coleman was able to climb out the upturned passenger window, but she fractured her neck at C7 and sustained other injuries.
Ms. Coleman also testified that as they approached the turn, she was gazing out her open window, but when she saw Ellis had crossed the white fog line, she glanced over and saw he was sending a text on his cell phone. 12She said he was not speeding, but was just not paying attention to the road.[1] Ms. Coleman was certain that there was nothing obstructing the road; specifically, she saw no log.
Ms. Coleman also testified that sometime after the incident, Ellis phoned and asked her to lie about the accident by telling insurance adjusters that she and Ellis were “kinfolk” and that he had planned to spend the night with her. She refused, and has never spoken to him since.
Ms. Rigsby, who co-owned Water Works with her husband (and, until late 2011, with another co-owner, Chris Lively), offered the company’s written policy, which gave certain employees “an assigned vehicle to be used solely for company business and commuting to and from work.” This *783 provided, “Personal use of a company vehicle is strictly prohibited without prior written permission from management” and “[d]riving a company vehicle under the influence of alcohol or any illegal substances is strictly prohibited and is grounds for immediate termination.” Ms. Rigsby showed that Ellis signed a copy of this written policy in April 2009, and testified that the company had assigned him a truck.
According to Ms. Rigsby, on the date of the accident it had started raining around noon, so Water Works sent all employees home. Ellis clocked but at 12:30 pm and did not have a job assignment for the next morning. Further, Ellis lived within a mile of Water Works’ shop, on Mt. Zion Road in south Shreveport, was never assigned to any jobs in the Minden area, and neither Ms. Rigsby nor her husband would have ^consented- to let him drive there. She fired him the next day, January 21, for taking the company truck without permission on a personal venture almost 40 miles from his home address and for driving while intoxicated.[2] On cross-examination, she admitted that after her late partner’s death, Ellis claimed that he — Lively—had authorized this trip to Minden, but she had no evidence that this was so.
A coworker of Ellis’s, Raymond Sheets, confirmed that Ellis had been a service technician for Water Works, had a truck assigned to him, and that both men answered to Lively. However, if Water Works ever had jobs in the Minden area, they sent him, Sheets, to those jobs because he lived nearby, and not Ellis.
Finally, James A. Thomas, a claims representative for United Fire, testified that he interviewed Ellis a few days after the accident. Ellis told him he was going to Mindeii to see a sick aunt, and that Ms. Coleman was his cousin, whom he picked up en route to see the aunt. Ellis also told Thomas that it had been raining that day, so he had not just got off work, and had not just come from a job in Haughton.

Procedural History

Ms. Coleman filed this suit for personal injuries in January 2012, naming United Fire, Ellis and Water Works as defendants. She later dismissed Water Works with a reservation of rights. The matter proceeded to a bench trial, with a stipulated $75,000 cap, in October 2014. The |4witnesses testified as outlined above.
United Fire introduced its business auto policy, which contained an omnibus clause agreeing to pay “all sums an insured must pay as damages because of bodily injury.” The policy also defined an “insured” to include “Anyone else while using with your permission a covered ‘auto’ you own, hire or borrow[.]”
Ellis .absconded before trial, so fhe parties offered his oral deposition, from October 2012, in lieu of his testimony. The deposition is digressive and largely inconsistent with everyone else’s account of events. Ellis insisted that he had worked until 8:30 that night, at a job in Haughton.[3] He then left for Minden to see his sick aunt, who lived in the same apartments as Ms. Coleman; en route, Ms. Coleman called him and asked him to pick- her up from her mother’s and take her home. He denied - he was talking on the phone or texting when -the accident occurred, but insisted that on the unlighted road he saw *784 a finished log, some 4-5 feet long and 1⅜ feet in diameter, lying in the right lane; he took evasive action and ran off the road. He denied being drunk, but admitted having “one beer” around 6:00 pm and later pleading guilty to DWI. He denied ever asking Ms. Coleman to lie about why she was in the truck, or telling anybody that she was his cousin. He described Water Works’ co-owner, Lively, as a “father” to him, who personally approved his trip to Minden that night to see his sick aunt, and even assigned him a job there the next morning. Ellis admitted that he had not owned a personal vehicle for about a year prior to the accident, and that ^Lively was fully aware of this. Of course, because Lively had since died, there was no way anyone could confirm or refute these claims.

Action of the District Court

The district cpurt wrote an opinion rejecting Ellis’s claim of a sudden emergency and finding him 100% at fault, awarding stipulated damages of $24,049.67, and fixing general damages at $23,400. On the crucial issue of insurance coverage, the court cited the Motor Vehicle Liability Law, La. R.S. 32:900', and the broad' interpretation of' permission in the jurisprudence, Manzella v. Doe, 94-2854 (La.12/8/95), 664 So.2d 398; Langston v. Shirley, 28,815 (La.App. 2 Cir. 10/30/96), 682 So.2d 1281, writ denied, 97-0008 (La.2/7/97), 688 So.2d 510. The court found that Water Works gave Ellis permission to usé the truck on his way to and from work, during the work day, and to respond- to any emergency service calls, thus conferring initial permission. Although the accident occurred over nine hours after he clocked out and nearly 50 miles from his home, Ellis’s actions did not amount to theft or utter disregard for the return or safety of the vehicle, Manzella v. Doe, supra, so initial permission was not revoked. The judgment cast Ellis and United Fire, in solido, for the total of $47,449.67. .
■ United Fire has appealed, raising one assignment of error.

Discussion

By its sole assignment of error, United Fire urges that the court erred in finding .coverage when the evidence was undisputed that,Ellis was not functioning in the course and scope of his employment, had no permission .Into be operating the truck at the time of the accident, and was in direct violation of written company policy regarding permissive use of the vehicle. As a threshold matter, United Fire contends the issue is purely legal, thus taking the case out of manifest error and into de novo review, citing Kevin Assocs. v. Crawford, 2003-0211 (La.1/30/04), 865 So.2d 34, a tax case in which the issue was domicile. However, this court and others have repeatedly held that permissive use is a factual finding subject to manifest error review, Brooks v. Minnieweather, 46,900 (La.App. 2 Cir. 1/25/12), 86 So.3d 684, writ denied, 2012-0467 (La.4/13/12), 85 So.3d 1251; Turner v. Alexander, 29,148 (La.App. 2 Cir. 2/26/97), 690 So.2d 756; Slain v. Thomas, 2005-1616 (La.App. 3 Cir. 5/31/06), 931 So.2d 518, writ denied, 2006-1649 (La.9/29/06), 937 So.2d 873. United Fire’s claim for de novo review lacks merit.
On the merits, United Fire urges that Ms. Coleman and Ellis simply did not prove express or implied permission, so the court should have found no “initial permission,” as in Aycock v. Jenkins Tile Co., 96-2348 (La.App. 1 Cir. 11/7/97), 703 So.2d 117, writ denied, 97-3056 (La.2/13/98), 709 So.2d 753, and Slain v. Thomas, supra. It argues that Ayeock is “remarkably similar” in that the employee was allowed to take the truck home in certain circumstances, and did so one Fri *785 day afternoon, but was strictly prohibited from using it for personal errands, so no initial permission ever occurred, and the alcohol-related accident Saturday . afternoon was not subject to the omnibus clause. United Fire shows the jurisprudence is replete with cases'finding either no permission or revoked permission, such as Miguez v. Platinum Underwriters Reins., 2005-887 (La.App. 3 Cir. 3/22/06), 926 So.2d 55, writs denied, 2006-1288, -1316 (La.9/15/06), 936 So.2d 1275, 1277; Campbell v. Verrett, 2002-0695 (La.App. 3 Cir. 10/30/02), 829 So.2d 1141, writ denied, 2002-2911 (La.2/14/03), 836 So.2d 116; and Jones v. Foster, 41,619 (La.App. 2 Cir. 12/13/06), 945 So.2d 262. Finally, it contends that Ellis’s conduct did indeed demonstrate utter disregard for the return or safekeeping of the property Slain v. Thomas, supra. It concedes that the court “may sympathize with Ms. Coleman,” but submits that Water Works did not grant initial consent and did not acquiesce or fail to object to Ellis’s personal use of the truck. It concludes that this court should reverse the judgment as to United Fire only.
As noted, United Fire’s “Business Auto Coverage Form” contained an omnibus clause defining an “insured” as, inter alia, “Anyone else while using with your permission a covered ‘auto’ you own, hire or borrow” with exceptions not applicable to this ease. The seminal case of Parks v. Hall, 189 La. 849, 181 So. 191 (1938), clearly sets out the legal understanding of permission:
[T]he policy, by its express terms, i.e., the omnibus clause, was made to cover, as an assured, any one .who was driving the car with the permission of the owner of the insured car. The provisions of the policy do not limit the liability thereunder to causes arising when the permitted driver was using the car either for the owner’s business or under any restricted circumstances. The language is not restricted, but used in its broadest possible sense * * The words used in the clause would be practically meaningless and the object there made nugatory if it were necessary to determine in every case whether, a,t the time and under the circumstances of the accident, the driver' was proceeding within the limitations of .the permission of the assured to use the car..
189 La. at 858-859, 181 So. at 194.
The jurisprudence has never varied; coverage is extended under the omnibus clause so long as the operator had the named insured’s permission to use the vehicle, regardless of whether its use at the time of the accident was within the contemplation of the named insured at the time permission was granted, and even when a deviation is in violation of specific instructions of the, insured. Waits v. Indemnity Ins. Co. of N. Amer., 215 La. 349, 40 So.2d 746 (1949); Dominguez v. American Casualty Co., 217 La. 487, 46 So.2d 744 (1950); Perkins v. McDow, 615 So.2d 312 (La.1993). Coverage is precluded only when the deviation from the use consented to amounts to theft or other conduct displaying utter disregard for the return or safekeeping of the property. Waits v. Indemnity Ins. Co., supra; Dominguez v. American Casualty Co., supra; Norton v. Lewis, 623 So.2d 874 (La.1993); Manzella v. Doe, supra.
In light of these principles, we detect no manifest error, in the court’s finding of permission. Permission plainly occurred when Water Works gave Ellis the truck and the keys, allowed him to drive it to and from work, and expected him to use it for emergency, calls, any time of day or night. His conduct in driving 35 miles out of his way to pick up a girlfriend was a deviation from the grant of permission, but there was no showing that he intended to steal it or disregard its safe return, thus distinguishing the case from Slain v. *786 Thomas and Jones v. Foster, supra. Even though Ellis pled guilty to DWI and later attempted to suborn Ms. Coleman to lie about the incident, she did not testify that he appeared drunk, but merely that he was |sdistracted by his cell phone. While Ellis’s conduct was far from exemplary, it did not rise to the level of theft or utter disregard for the return or safekeeping of the truck. The record supports the district court’s finding of permission.
Finally, we note that this ease did not involve the use of a company vehicle by a person who was not an employee, as in Miguez v. Platinum Underwriters Reins., supra. It also did not involve the use of a company vehicle by an employee who never had permission to use the vehicle taken, as in Norton v. Lewis, Campbell v. Verrett and Aycock v. Jenkins Tile Co., supra. This crucial factual distinction makes the cases cited by United Fire inapplicable to the instant case.

Conclusion

For the reasons expressed, the judgment is affirmed. All costs are to be paid by the appellant, United Fire & Casualty Insurance Co.
AFFIRMED.

. The police report of the accident was not ■introduced into evidence, but Minden City Court records showed that Ellis pled guilty to DWI for the incident.

. The Louisiana Workforce Commission denied his unemployment insurance claim for insufficient base period income, but also found aggravated misconduct connected with the employment. .

. Haughton is about halfway between Shreveport and Minden.