# Supreme Court of Louisiana

FOR IMMEDIATE NEWS RELEASE                                    NEWS RELEASE #027

FROM: CLERK OF SUPREME COURT OF LOUISIANA

The Opinions handed down on the **26th day of June, 2019**, are as follows:

**PER CURIAM**:

2018-C-1746    SHERRY BOOTHE AND BARRY BOOTHE, INDIVIDUALLY AND ON BEHALF OF
               THEIR MINOR CHILDREN, AMBER AND AMANDA BOOTHE v. STATE OF
               LOUISIANA DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT AND PARISH
               OF EAST BATON ROUGE (Parish of E. Baton Rouge)

               In this matter, we are called upon to decide whether the district
               court erred in granting judgment notwithstanding the verdict in
               favor of the plaintiff and in awarding damages. For the reasons
               that follow, we affirm the granting of the judgment
               notwithstanding the verdict, but amend the judgment with respect
               to damages.

               AFFIRMED AS AMENDED.

               HUGHES, J., dissents in part with reasons.
               CRICHTON, J., dissents and assigns reasons.

**SHERRY BOOTHE AND BARRY BOOTHE, INDIVIDUALLY AND ON
BEHALF OF THEIR MINOR CHILDREN, AMBER AND AMANDA
BOOTHE**

**VERSUS**

**STATE OF LOUISIANA DEPARTMENT OF TRANSPORTATION AND
DEVELOPMENT AND PARISH OF EAST BATON ROUGE**

**ON WRIT OF CERTIORARI TO THE COURT OF APPEAL,
FIRST CIRCUIT, PARISH OF E. BATON ROUGE**

## PER CURIAM

In this matter, we are called upon to decide whether the district court erred in granting judgment notwithstanding the verdict in favor of the plaintiff and in awarding damages. For the reasons that follow, we affirm the granting of the judgment notwithstanding the verdict, but amend the judgment with respect to damages.

## FACTS AND PROCEDURAL HISTORY

On December 11, 2008, the Baton Rouge area experienced a snowstorm. The storm was of sufficient magnitude to result in the issuance of a winter weather advisory and closure of area schools. The schools reopened the next day as the weather improved.

At approximately 8:00 a.m. on the morning of December 12, 2018, Sherry Boothe was operating her vehicle eastbound on Greenwell Springs Road, after bringing her daughter to school. As Ms. Boothe crossed the Comite River Bridge to return home, she lost control of her vehicle. Her vehicle crossed the median, flipped, and came to rest in the opposite lane of oncoming traffic. According to Ms. Boothe, after exiting her vehicle, she believed she had hit either ice or oil because the road

was slippery.

Lieutenant Chad Ruiz investigated the accident. He found ice in the fog line, the centerline, and the opposite fog line of the road. As a result, Lt. Ruiz closed both sides of the roadway and remained on the scene until the road was sanded.

Subsequently, Ms. Boothe and her husband, individually and on behalf of their two minor daughters, filed the instant suit against the State of Louisiana, through the Department of Transportation and Development ("DOTD"), seeking personal injury damages arising from the accident. After extensive discovery, the matter proceeded to a two-day jury trial.

At trial, Ms. Boothe testified she traveled the Comite River Bridge earlier that morning in heavy traffic to bring her daughter to school, and did not notice any ice the first time she crossed. Ms. Boothe admitted DOTD posted warning signs that the bridge will ice, but explained the sign is posted year-round, and the bridge contained no active warning. According to Ms. Boothe, it had snowed the day before, but the snow began to melt by midday. Ms. Boothe described the day of the accident as "cloudless and it [the snow] was almost all gone." She testified the car slid and she knew "it had to be ice or oil because it was so slippery."

Lt. Ruiz testified he inspected the road immediately upon arrival at the accident scene and discovered "there was ice in the fog line, the centerline, and the opposite fog line." At that time, he closed both sides of the bridge and requested DOTD sand the road. Lt. Ruiz did not recall whether the side where Ms. Boothe's vehicle ended up was sanded, but stated "I think that's something I probably would have documented." Lt. Ruiz also testified he did not issue Ms. Boothe a citation.

Conard Monroe, a highway foreman employed by DOTD, testified he did not recall the day of the accident, but admitted DOTD issued at least two work orders that day to sand the Comite River Bridge. The work orders did not indicate the time the

2

crews were sent out, and Mr. Monroe did not recollect the time he went out. Mr. Monroe maintained throughout his testimony that when he sands bridges, he sands both sides of the bridge. However, plaintiffs' counsel went on to question Mr. Monroe about his deposition testimony, in which Mr. Monroe had stated one yard of sand was used on the bridge and that would be enough sand to cover at least one side. Mr. Monroe admitted that he stated in deposition that his crew only sanded one side of the bridge that day. However, he reiterated that he did not have any independent recollection of the incident in question, and pointed out that he sanded bridges other than the Comite River Bridge on the day of the accident. He further testified he could not think of any reason why they would have only sanded one side of the bridge and not the other.

Patrick Batiest, a highway foreman employed by DOTD, testified he received a work order to remove trees near an area near the Comite River Bridge the day before the accident and was required to traverse the bridge. Mr. Batiest testified he did not remember whether ice was on the bridge, but maintained he would have reported it to the superintendent to request permission to sand the bridge. The next day, the day of the accident, Mr. Batiest received a second work order requesting him to sand the Comite River Bridge. At trial, Mr. Batiest could not recall whether the accident had occurred or whether the police had arrived when he sanded the bridge. Nonetheless, Mr. Batiest acknowledged his deposition testimony indicated he had not seen a flipped vehicle, but that a police officer was on the scene blocking traffic. Mr. Batiest also acknowledged that he is supposed to sand both lanes of travel when sanding a bridge.

Albert Shields, a parish highway superintendent employed by DOTD, was the supervisor in charge of Mr. Batiest and Mr. Monroe on the day of the accident. Mr. Shields explained that when a storm is coming, DOTD places more inspectors out on

the roads during the event to search for bad spots. DOTD monitors the weather through weather information received from the engineer techs, the district administrator, or from DOTD's downtown headquarters. DOTD also has a priority list of bridges in East Baton Rouge Parish that are most worrisome during a snow event, and the Comite River Bridge ranks in the top third of priority. Mr. Shields testified that at the time of the accident, state troopers would recommend highway closures, and that he did not have the authority to close a highway. He explained that if he had received a call from Mr. Batiest about ice on the Comite River Bridge, he would have gone to the bridge, made a judgment call, and called the engineering tech. According to Mr. Shields, at the time of the accident, DOTD only had one sand truck in his unit. He explained that each sanding job is a "judgment call," depending on what's on the road and the severity of the ice situation. Mr. Shields testified the foremen would not necessarily sand both sides of the bridge, explaining "[i]f they got called out during the day and only one side was froze up and the other side didn't have any accumulation of ice or snow on the road, it wouldn't be necessary to sand the other side."

At the conclusion of trial, the jury was given the following interrogatory: "[w]as the State of Louisiana, Department of Transportation and Development at fault for Sherry Boothe's accident on December 12, 2008?" The jury responded "no." The jury was polled, confirming a 9-3 verdict. The district court subsequently signed a judgment in conformity with the jury's verdict.

After the judgment was signed, plaintiffs filed a motion for judgment notwithstanding the verdict ("JNOV") and an alternative motion for new trial. Following a hearing, the district court granted the motion for JNOV and rendered

4

judgment in favor of plaintiffs in the total amount of $919,191.20.[1] The district court also conditionally granted a new trial in favor of plaintiffs.

DOTD appealed. On appeal, the court of appeal vacated in part, amended the judgment in part and affirmed it as amended. *Boothe v. State, Dep't of Transportation & Dev.*, 2018-0120 (La. App. 1 Cir. 9/21/18), ___ So.3d ___. In affirming the granting of the motion for JNOV, the court of appeal reasoned the evidence overwhelmingly supported the district court's finding that the icy condition of the Comite River Bridge created an unreasonable risk of harm and was a substantial factor in bringing about the accident. Turning to damages, the court of appeal characterized the district court's general damage award as being "relatively high," but concluded the award did not rise to the level of an abuse of discretion. However, the court amended the district court's $600,000 general damage award to Ms. Boothe to reflect the statutorily imposed $500,000 cap set forth in La. R.S. 13:5106(B)(1) and affirmed this award.[2]

---

[1] The district court itemized the damages as follows:

| | |
|---|---|
| Past Medical Expenses | $32,431.20 |
| Future Medical Expenses | $44,760.00 |
| Past and Future Physical Pain and Suffering | $300,000.00 |
| Past and Future Mental Anguish | $100,000.00 |
| Past and Future Loss of Enjoyment of Life | $100,000.00 |
| Loss of Wages/earning capacity | $ 75,000.00 |
| Loss of society, services and relations | $150,000.00 |

In addition, the district court awarded Ms. Boothe's two minor children, $8,500.00 each (totaling $17,000.00) for loss of society, services, and relations.

[2] The court of appeal's judgment also vacated the district court's awards to Ms. Boothe's husband and children for loss of society, services, and relations, finding these claims were legally extinguished pursuant to La. R.S. 13:5106(B)(1). In addition, the court of appeal vacated the district court's $75,000 award to Ms. Boothe for loss of wages/earning capacity, finding no support in the record for such an award. Finally, the court ordered the award for future medical be placed in a revisionary trust pursuant to pursuant to La. R.S. 13:5106(B)(3)(c). Plaintiffs have not sought review of the court of appeal's judgment insofar as it vacated these awards or reduced the general damage

(continued...)

Upon DOTD's application, we granted certiorari to consider the correctness of this judgment. *Boothe v. State of Louisiana, Dept. of Transp. & Develop.*, 18-1746 (La. 1/28/19), 263 So.3d 424.

## DISCUSSION

In its application, DOTD presents two assignments of error: (1) the court of appeal erred in failing to reverse the district court's granting of the motion for JNOV; and (2) the compensatory damage award is excessively high. We will address these issues in turn.

*Motion for JNOV*

The legal authority for granting a JNOV is set forth in La.Code Civ. P. art. 1811(B), which provides, in pertinent part, "[i]f a verdict was returned the court may allow the judgment to stand or may reopen the judgment and either order a new trial or render a judgment notwithstanding the verdict." In *Joseph v. Broussard Rice Mill, Inc.*, 2000-0628 (La. 10/30/00), 772 So.2d 94, 99, we discussed the criteria for granting a JNOV, as well as, the standards for reviewing a judgment granting a JNOV. We stated:

> La.Code Civ. Proc. art. 1811 controls the use of JNOV. Although the article does not specify the grounds on which a trial judge may grant a JNOV, in *Scott v. Hospital Serv. Dist. No. 1*, 496 So.2d 270 (La.1986), we set forth the criteria used in determining when a JNOV is proper. As enunciated in *Scott*, a JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable persons could not reach different conclusions, not merely when there is a preponderance of evidence for

---

[2](...continued)
award to the statutory cap of $500,000. Accordingly, these portions of the court of appeal's judgment are final and will not be discussed further in this opinion.

the mover. The motion should be denied if there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. *Scott*, 496 So.2d at 274. In making this determination, the trial court should not evaluate the credibility of the witnesses, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. *Anderson v. New Orleans Pub. Serv., Inc.*, 583 So.2d 829, 832 (La.1991). This rigorous standard is based upon the principle that "[w]hen there is a jury, the jury is the trier of fact." Scott, 496 So.2d at 273; *Jinks v. Wright*, 520 So.2d 792, 794 (La.App. 3 Cir.1987).

In reviewing a JNOV, the appellate court must first determine if the trial judge erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether to grant the motion or not, i.e. do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable persons could not arrive at a contrary verdict? If the answer to that question is in the affirmative, then the trial judge was correct in granting the motion. If, however, reasonable persons in the exercise of impartial judgment might reach a different conclusion, then it was error to grant the motion and the jury verdict should be reinstated. *Anderson*, 583 So.2d at 832.

In order for the DOTD to be held liable, plaintiffs must prove that (1) DOTD had custody of the thing which caused plaintiffs' damages, (2) the thing was defective because it had a condition which created an unreasonable risk of harm, (3) DOTD had actual or constructive notice of the defect and failed to take corrective measures within a reasonable time, and (4) the defect was a cause-in-fact of plaintiffs' injuries. *Cormier v. Comeaux*, 98-2378 (La. 7/7/99), 748 So.2d 1123, 1127.

Plaintiffs argue that they clearly established all four requirements in this case. Specifically, they contend they proved (1) DOTD had custody of the roadway, (2) the icy conditions of the roadway presented an unreasonable risk of harm, (3) DOTD had knowledge of the dangerous conditions, and (4) the ice was a cause in fact of the accident.

In contrast, DOTD argues the evidence was inconclusive as to whether the

7

condition of the roadway at the time of the accident presented an unreasonable risk of harm. DOTD asserts the facts and inferences of this case do not point so strongly and overwhelmingly in favor of the plaintiffs that reasonable jurors could not have arrived at the verdict they did on the issue of liability.

The unrefuted testimony of the investigating officer, Lt. Ruiz, established that there was ice on the road at the scene of the accident. In particular, Lt. Ruiz testified he inspected the road immediately upon arrival at the accident scene and discovered "there was ice in the fog line, the centerline, and the opposite fog line."

DOTD's employees uniformly testified that icy roads are a hazard to the motoring public, and the record establishes that DOTD issued a work order to sand the Comite River Bridge following the snowstorm. However, Lt. Ruiz testified that he did not see any evidence of sanding on the bridge, adding that sanding was something he probably would have documented if it had been present.

The primary testimony concerning DOTD's efforts at sanding the bridge came from Mr. Monroe, the foreman of the crew responsible for sanding the Comite River Bridge. Mr. Monroe testified that when he sands a bridge, he typically sands "both sides of the bridge, east and west." However, when questioned about his earlier deposition testimony, he admitted that he had testified that his crew only sanded one side of the bridge:

> Q. So you agree with me in your deposition you testified you only sanded -- your crew only sanded one side of the bridge that day?
>
> A. Yes.

The uncontroverted evidence in the record reveals that there was ice on the roadway at the time of the accident, and DOTD failed to take proper measures to address this condition. This evidence points so strongly in favor of the moving party that reasonable persons could not reach different conclusions. Accordingly, we find

the district court did not err in granting the motion for JNOV in favor of plaintiffs

*Damages*

Having found the district court properly granted the motion for JNOV, we now turn to a review of the district court's damage award. In particular, we focus on the district court's general damage award which was affirmed on appeal after being reduced to $500,000 in order to conform with the statutory cap.

It is well-settled that vast discretion is accorded to the trier of fact in fixing general damage awards. La. Civ.Code art. 2324.1; *Duncan v. Kansas City Southern Railway Co.*, 00–0066 (La.10/30/00), 773 So.2d 670. This vast discretion is such that an appellate court should rarely disturb an award of general damages. *Youn v. Maritime Overseas Corp.*, 623 So.2d 1257, 1261 (La.1993), *cert. denied*, 510 U.S. 1114, 114 S.Ct. 1059, 127 L.Ed.2d 379 (1994). Thus, the role of the appellate court in reviewing general damage awards is not to decide what it considers to be an appropriate award, but rather to review the exercise of discretion by the trier of fact. *Youn*, 623 So.2d at 1260.

The initial inquiry, in reviewing an award of general damages, is whether the trier of fact abused its discretion in assessing the amount of damages. *Cone v. National Emergency Serv. Inc.*, 99–0934 (La.10/29/99), 747 So.2d 1085, 1089; *Reck v. Stevens*, 373 So.2d 498 (La.1979). Only after a determination that the trier of fact has abused its "much discretion" is a resort to prior awards appropriate, and then only for the purpose of determining the highest or lowest point which is reasonably within that discretion. *Coco v. Winston Indus., Inc.*, 341 So.2d 332 (La.1976). In reviewing the facts, the reviewing court should examine whether the present award is greatly disproportionate to past awards for similar injuries, though prior awards are only a guide. *Bouquet v. Wal-Mart Stores, Inc.*, 08-0309 (La. 4/4/08), 979 So.2d 456, 459.

9

It is undisputed Ms. Boothe sustained a fractured cervical disc as a result of the December 12, 2008 crash. She was treated conservatively following the accident and was required to wear a neck brace continuously for five months. She underwent approximately six weeks of physical therapy in early 2009, which allowed her to start regaining motion. She later began seeing Dr. Nyboer, a pain management doctor, who prescribed muscle relaxers. Based on the advice of Dr. Soleau, Ms. Boothe began to wean herself from the muscle relaxers, as they were causing her to be lethargic. Over the next several years, Ms. Boothe continued to be sporadically treated by Dr. Soleau and Dr. Nyboer. She also underwent physical therapy sessions in 2012 and 2015. At the time of trial, Ms. Boothe testified she was still seeing Dr. Soleau as needed.

Dr. Soleau did not place any specific limitations on Mrs. Boothe's activities, but rather testified he would "let pain limit her activities." Dr. Soleau further testified that "she was good" from a structural/stability standpoint and he would simply tell her to use common sense regarding physical activities.

Dr. Soleau stated that although surgery would remain an option for Mrs. Boothe going into the future, he would not "pull [the trigger] until we have to." Moreover, based on all of the MRIs that Mrs. Boothe had undergone over the years, Dr. Soleau considered her condition to be "stable" and believed that conservative treatment remained appropriate.

Ms. Boothe testified she continues to suffer from headaches and has severely limited motion in her neck. She indicated that she has had to reduce her work hours to part-time, can no longer garden like she used to, and is not as active at home and on vacation as she used to be. Ms. Boothe also testified she was unable to drive for several months after the accident.

DOTD argues that similar cases involving cervical fractures have resulted in

10

general damage awards of $50,000 or less. *See Coleman v. United Fire and Cas. Co.*, 50,181 (La. App. 2 Cir. 9/30/15), 181 So.3d 781 ($23,400 awarded for a fractured neck); *Coughlan v. Smith*, 07-0485 (La. App. 4 Cir. 11/14/07), 971 So.2d 1197 ($45,000 awarded for soft tissue neck injuries not requiring surgery); *Monk v. State, Depart. of Transp. & Develop.*, 05-0097 (La. App. 3 Cir. 6/29/05), 908 So.2d 688 ($50,000 awarded for unspecified neck injury); *Mullins v. Melerine*, 636 So.2d 240 (La. App. 4 Cir. 1993) ($22,679 awarded for hairline cervical fracture requiring the use of a neck brace); *Parliman v. Kennelly*, 520 So.2d 445 (La. App. 5 Cir. 1988) ($31,000 awarded for compression fracture of a cervical vertebra).

We find the case of *Collins v. Shelter Mutual Ins. Co.*, 36,528 (La. App. 2 Cir. 12/11/02), 833 So.2d 1166, 840 So.2d 539, *writ denied*, 2003-0124 (La. 3/21/03), 840 So. 2d 539, to be instructive. In *Collins*, the plaintiff sustained an injury to her neck and shoulder area as a result of an accident. The court found the injury had persisted over the years and would likely continue to cause the plaintiff pain and discomfort indefinitely. The evidence indicated that her pain would have adverse effects on her life. Considering the severity and long-term nature of the symptoms, the district court awarded $150,000 in general damages, and the court of appeal affirmed on appeal. While the injuries in the instant case are more significant than those in *Collins*, the facts are otherwise similar with respect to the long duration of the condition.

Taking into account all the facts of this case, we find the district court's general damage award of $600,000 rises to the level of an abuse of discretion. Instead, we find $300,000 to be an appropriate award for general damages.

**DECREE**

For the reasons assigned, the judgment of the court of appeal is amended to reduce the general damage award to $300,000. In all other respects, the judgment of

11

the court of appeal is affirmed.

06/26/19

**SHERRY BOOTHE AND BARRY BOOTHE, INDIVIDUALLY AND ON BEHALF OF THEIR MINOR CHILDREN, AMBER AND AMANDA BOOTHE**

**VERSUS**

**STATE OF LOUISIANA DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT AND PARISH OF EAST BATON ROUGE**

**ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FIRST CIRCUIT, PARISH OF EAST BATON ROUGE**

**Hughes, J.**, dissenting in part.

I respectfully dissent in part to protest the superficial manner in which this court reduced the plaintiff's damage award.

In the Coleman case cited, the amount of damages was not appealed. Neither were damages appealed by the plaintiff in the cited Collins case, which was rendered 17 years ago, in 2002.

There is no discussion of the standard for reducing an excessive award to the highest amount reasonable; rather, it appears this court simply picked a number out of thin air, thus substantiating its judgment for that of the fact-finder, which is not the proper analysis.

The court of appeal was correct in all aspects and should be affirmed.

**SUPREME COURT OF LOUISIANA**

**No. 2018-C-1746**

**SHERRY BOOTHE AND BARRY BOOTHE, INDIVIDUALLY AND ON BEHALF OF THEIR MINOR CHILDREN, AMBER AND AMANDA BOOTHE**

**VERSUS**

**STATE OF LOUISIANA DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT AND PARISH OF EAST BATON ROUGE**

**ON WRIT OF CERTIORARI TO THE COURT OF APPEAL, FIRST CIRCUIT, PARISH OF E. BATON ROUGE**

**Crichton, J., dissents and assigns reasons.**

"When there is a jury, the jury is the trier of fact." *Scott v. Hosp. Serv. Dist. No. 1*, 496 So. 2d 270, 273 (La. 1986). *See also* C.C.P. art. 1736. In this case, the jury found that the DOTD was not responsible for plaintiff's accident. In my view, in overturning that verdict and granting the JNOV, the trial court substituted her judgment for that of the jury, evaluated the credibility of witnesses, and failed to make reasonable inferences and resolve factual questions in favor of the non-moving party, the DOTD. *Joseph v. Broussard Rice Mill, Inc.*, 2000-0628, p.5 (La. 10/30/00), 772 So. 2d 94, 99. I would therefore reverse the trial court judgment and reinstate the jury verdict.